

## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| CITY OF SOCORRO, TEXAS, | | |
| | § | |
| Appellant, | | No. 08-14-00295-CV |
| | § | |
| v. | | Appeal from |
| | § | |
| SAMUEL CAMPOS, MANUEL COBOS, | | 120th District Court |
| LETICIA DURAN, GLORIA ELMOR, | § | |
| ISELA ENCERRADO, ARTURO | | of El Paso County, Texas |
| GALINDO, PATRICIA GARDEA, | § | |
| DARIO GARDUNO, OBED | | (TC # 2013DCV4546) |
| GONZALEZ, GABRIEL GTIERREZ, | § | |
| RENE HERNANDEZ, MYRA | | |
| HERNANDEZ, CONCEPCION | § | |
| JIMENEZ, MANUEL JUAREZ, | | |
| LORENZO LARA, ENRIQUETA | § | |
| LOPEZ, LUIS LOPEZ, GLORIA | | |
| LUCERO-VASQUEZ, GRACE | § | |
| MADRID, OSCAR MARTINEZ, | | |
| RAQUEL MARTINEZ, YOLANDA | § | |
| MENDEZ, ALBERT ORTIZ, LYDIA | | |
| ORTIZ, MARYBEL ORTIZ, IRMA | § | |
| SANCHEZ, RAMON SANCHEZ, | § | |
| DAVID SAUCEDO, SANDRA | | |
| SAUCEDO, ROSALIA SILVA, | § | |
| HORTENCIA VASQUEZ-SANCHEZ, | | |
| MARIA TERRAZAS, DAVID CASIO, | § | |
| AS THE REPRESENTATIVE OF THE | | |
| ESTATE OF AURORA ZARAGOZA, | § | |
| | | |
| Appellees. | § | |

**O P I N I O N**

In this takings case, we address whether residents of the City of Socorro properly pleaded claims for relief arising out of the flooding of their homes so as to overcome Socorro's governmental immunity. The residents contend that the City of Socorro caused that flooding by constructing a ditch, and later two embankments, that were intended to protect one subdivision at the expense of their neighborhood. We hold that they adequately pleaded their claim, and that the case can therefore proceed to determine if they can prove their allegations.

## FACTUAL SUMMARY

In 2006 El Paso and it surrounding area suffered a historic rain event.[1] Those rains revealed the vulnerabilities of several neighborhoods to flooding. One of those vulnerable neighborhoods, the Valley Ridge Subdivision, sits in the "Sparks Arroyo" flood path which is located in the City of Socorro. In the desert southwest, an arroyo describes a natural watercourse or gulch that is usually dry except after rains. *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 825 n.1 (Tex.App.--El Paso 2010, no pet.). The Valley Ridge Subdivision was extensively flooded in 2006. This lawsuit arises out of the City of Socorro's efforts to protect that neighborhood. In doing so, the Appellees contend the City re-diverted flood waters into their neighborhood.

### Appellees' Petition

Appellees filed suit against Socorro on December 11, 2013. Their Second Amended Petition asserts the following factual contentions: All of the Appellees have lived in the "Patti Jo Neighborhood", either buying, building, or inheriting residences in the 1970s, 1980s, 1990s, or early 2000s. In that thirty-plus year period, the neighborhood had never flooded. Several

---

[1] An El Paso city engineer previously testified, based on media accounts, that those rains were "almost like a 500-year flood." *City of El Paso v. Mazie's L.P.*, 408 S.W.3d 13, 23 (Tex.App.--El Paso 2012, pet denied). Whether of that magnitude or not, the rains and resulting damage led President Bush on August 15, 2006 to issue a Major Disaster Declaration for the area. https://www.fema.gov/disaster/1658 (last visited November 23, 2015).

residents actually attempted to buy flood insurance but were turned down because they were not in a "flood prone" area.

Between 2000 and 2004, private developers built the "Valley Ridge Subdivision" but did so directly in the flow of the Sparks Arroyo. With the heavy rains in 2006, the Valley Ridge Subdivision experienced significant damage. The Patti Jo Neighborhood, however, which was not in the path of the Sparks Arroyo, was not flooded.

To remedy the flooding issues in the Valley Ridge Subdivision, the City of Socorro in 2009 built a diversion channel designed to intercept water and mud coming down the Sparks Arroyo and redirect it towards another existing drainage channel. These channels would redirect the flow of the arroyo around the Valley Ridge Subdivision and deposit it onto a tract of land east of Thunder Road.

In 2010, the United States Army Corps of Engineers issued a report noting that Socorro's actions had diverted water from its original flow path. That same year, the El Paso Water Utilities, El Paso County, and the Texas Water Development Board released a master storm water plan that recognized Socorro's efforts were "intended to relocate the arroyo flow path." The storm water plan made detailed recommendations to address the risk of flooding to downstream communities caused by Socorro's actions, but Appellees contend those recommendations were not implemented.

In in a three day period in September 2013, the area received over six inches of rainfall. Just over five and half inches fell on a single day, and there was severe flooding in much of the area. Socorro's diversion channel worked in the sense that the Valley Ridge subdivision was spared any flooding from the upstream direction, but the water and mud from the Spark's arroyo collected on the east side of Thunder Road to such an extent that the Valley Ridge subdivision was once again threatened from flooding--this time from the direction of Thunder Road. To

protect the Valley Ridge subdivision, on September 12, 2013, Socorro closed Thunder Road and built two four foot high sand embankments channeling the water across Thunder Road onto another tract of land which was adjacent to the Patti Jo Neighborhood. As Appellees allege: "The two embankments were meant to funnel the diverted water spilling out onto Thunder Rd. southwest, away from the Valley Ridge Subdivision, and towards Plaintiffs' Patti Jo Neighborhood." This action resulted in one to three feet of water, mud, and debris being deposited into their homes. One of the Appellees later served a public information request on the City seeking information about the diversion. Socorro failed to respond or provide any of the information requested.

From these facts, Appellees asserted two causes of action. They contended that both through the original 2009 diversion channel, and the 2013 Thunder Road embankments, Socorro *purposely* redirected the flow of water from the Valley Ridge subdivision towards the Patti Jo Neighborhood. They allege that the City of Socorro was "substantially certain" these actions would cause flooding and damage to Appellees' properties. Contending that Socorro made the calculation that the "benefit to the public good outweighted [sic] the risk of harm to their property", its actions constitute a taking under the Texas Constitution. Appellees also contend the actions of the City create an intentional nuisance actionable under the takings clause of the Texas Constitution.

### Plea to the Jurisdiction

Socorro filed a plea to the jurisdiction which attached no jurisdictional evidence.[2] Instead, it attacked the allegations in the petition asserting that whether the Appellees are complaining about the construction of the diversion channel in 2009, or the embankments

---

[2] The live pleadings before us include Plaintiffs' Second Amended Petition, and the City of Socorro's Amended Plea to the Jurisdiction. When the suit was first filed, Socorro filed a motion to limit or abate pending discovery. Appellees agreed to abate all discovery pending resolution of the plea to the jurisdiction.

4

funneling water across Thunder Road in 2013, the petition does not allege the requisite element of intent. It further contends the construction of the 2009 diversion channel did not cause an actual invasion of their property. With regard to the 2013 embankments, Socorro contends the allegations do not demonstrate that the City took their property for public use, or that the City had the requisite intent. Further, because the flooding occurred only once, and during an usually heavy rainstorm, Socorro urged the Appellees cannot in good faith plead that the City knew that its act was causing specific identifiable harm, or that such harm was substantially certain to occur. The trial court denied the plea.

## ISSUES ON APPEAL

Socorro raises three issues for our review. Issue One claims that even if all the facts as alleged are true with respect to the 2009 diversion, Appellees have failed to state a valid takings claim. Issue Two makes the same claim with regard to the construction of the 2013 embankment. Issue Three contends the nuisance claim is tied to the takings claim, and because the takings claim fails, the nuisance claim must be dismissed as well.

## GOVERNMENTAL IMMUNITY AND TAKINGS CLAIMS

The Texas Constitution commands that: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX.CONST. art. I, § 17(a). By its terms, the provision guards not only against an outright taking of property, but also to damage or destruction of property. Each of these are distinct claims arising under Article I, Section 17, but courts use the term "taking" as a shorthand to refer to all three types of claims. *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n.2 (Tex. 2004). Governmental immunity generally protects municipalities like

the City of Socorro from lawsuits for damages and from liability.[3] *Ben Bolt-Palito Blanco Consol. Indep. School Dist. v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006). That immunity, however, does not extend to takings, whether outright or by damage or destruction of property. *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001).

A takings claim consists of three elements: (1) an intentional act by the government under its lawful authority, (2) resulting in a taking, damaging, or destruction of the plaintiff's property, (3) for public use. *Little-Tex Insulation*, 39 S.W.3d at 598; *City of El Paso v. Mazie's, L.P.*, 408 S.W.3d 13, 18 (Tex.App.--El Paso 2012, pet. denied); *City of El Paso v. Ramirez,* 349 S.W.3d 181, 186 (Tex.App.--El Paso 2011, no pet.). The intent element requires those seeking redress under Section 17(a) to show that the government "intentionally took or damaged their property . . . or was substantially certain that would be the result." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005). "[T]he requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). It is not enough that the act causing the harm is intentional; the governmental entity must know to a substantial certainty that the harm complained of would occur. *Jennings,* 142 S.W.3d at 313-14. Accordingly, a takings claim cannot rest on mere negligence. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997). Stated otherwise, "awareness of the mere possibility of damage is no evidence of intent." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009).

---

[3] Sovereign immunity applies to the State and to its various divisions, including agencies, boards, hospitals, and universities. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity operates like sovereign immunity and affords a similar protection to subdivisions of the State, including counties, cities, and school districts. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The terms are often used interchangeably by the courts. *Taylor*, 106 S.W.3d at 644 n.3.

An actionable taking also must be for a public purpose. By its very text, the Constitution provides for compensation only if property is damaged or appropriated "for or applied to public use." TEX. CONST. art. I, § 17(a). At the heart of the takings clause lies the premise that the government should not "forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Steele v. City of Houston*, 603 S.W.2d 786, 789 (Tex. 1980), *quoting Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

## PLEAS TO THE JURISDICTION

While a valid takings claim waives governmental immunity, a plaintiff must plead facts invoking that waiver. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 660 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Absent a pleading making out a prima facie case, the entity's immunity from suit has not been waived. *Id.* A governmental entity may challenge the existence of that prima facie case through a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *Univ. of Texas at El Paso v. Ochoa*, 410 S.W.3d 327, 330 (Tex.App.--El Paso 2013, pet. denied). The plea may attack the face of the pleading, or it may also include jurisdictional evidence which thereby places into issue the existence of a jurisdictional fact. *Miranda*, 133 S.W.3d at 226-27; *College of the Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex.App.--Houston [14th Dist.] 2014, pet. denied). In this case, Socorro only attacks the pleading and no jurisdictional evidence is included in our record.

When a plea to the jurisdiction challenges the pleading itself, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226-27. We accept the allegations in the pleadings as true and construe them in the plaintiff's favor. *Miranda*, 133 S.W.3d at 226-27; *Mayfield v. Tarrant Regional Water Dist.*, 467 S.W.3d 706, 715 (Tex.App.--El Paso 2015, no pet.). If the pleadings do not

contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). In that instance the plaintiff should be afforded the opportunity to amend. *Id*. However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction can be granted without allowing an opportunity to amend. *Id.; Mayfield*, 467 S.W.3d at 715.

Whether a trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002). Additionally, whether the pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226.

## ANALYSIS

Socorro isolates each of the actions that it took -- construction of the 2009 diversion ditch and construction of the temporary sand embankments in 2013 -- and then contends neither is actionable. We address each in turn.

### The 2009 Diversion Ditch

As to the 2009 diversion ditch, Socorro first contends that Appellees cannot allege an actual physical appropriation or invasion of their properties because Socorro only created the possibility of flooding. We agree that the mere possibility of future flooding would not rise to the level of a constitutional taking. In *Howard v. City of Kerrville*, 75 S.W.3d 112, 117 (Tex.App.--San Antonio 2002, pet. denied), for instance, a landowner's claim that his property was subject to possible flooding failed to prove an appropriation of that property. Because the 2009 ditch did not flood Appellees property until 2013, Socorro claims that the ditch likewise only created a risk of future flooding. But it is not clear to us from the amended petition that

8

Appellees are claiming that the 2009 diversion ditch by itself was the cause of their flooding. The petition recites the history of the construction of the 2009 diversion ditch, the additional action in 2013 of funneling the ditch's run-off across Thunder Road, and then concludes but for these "actions" the Appellees properties would not have been flooded.

Even if we agree that the pleadings do not raise the construction and maintenance of the 2009 diversion ditch as a stand-alone claim, that would not mandate a reversal and dismissal of the suit. As we said in *Maize's*, we do not "restrict our analysis to a single paragraph in the petition." 408 S.W.3d at 19. The petition as a whole alleges that the diversion of water and mud from the 2009 ditch to the east of Thunder Road, and then the funneling of that water across Thunder Road towards the Appellees in 2013, extensively damaged their property. Taking all of these alleged facts together, Appellees have alleged an invasion and unreasonable interference with their property as of September 2013.

Socorro further contends that the pleading fails to allege the requisite intent element with regard to the 2009 diversion ditch. Socorro correctly notes that Appellees must plead, and eventually prove, that the City knew that a specific act was causing an identifiable harm or knew that the harm was substantially certain to result. *Gragg*, 151 S.W.3d at 555. Further, the City's intent must be judged at the time of its actions. *Pollock*, 284 S.W.3d at 821. A mere possibility of harm is not evidence of intent. *Id*.

Our problem with Socorro's position, however, is that the only issue before us is whether Appellees have properly pleaded the intent element, and on the face of the petition, they have, at least with respect to the combined effects of the 2009 and 2013 actions. The second amended petition states:

> Defendant intentionally diverted the Sparks Arroyo away from the Valley Ridge Subdivision to prevent it from flooding like it did in 2006. In doing so, Defendant built and maintained a flood diversion channel to purposefully redirect the flow of flood waters away from the Valley Ridge Subdivision and towards Plaintiffs'

9

Patti Jo Neighborhood. Defendant installed embankments along Thunder Rd. during the September 2013 storms to do the same thing.

Defendant knew its construction, operation and maintenance of the Sparks Arroyo diversion channel and its construction of the Thunder Rd. embankments were substantially certain to cause flooding and damage to Plaintiffs' property during heavy rain. Despite this substantial certainty, Defendants acted intentionally to protect the Valley Ridge Subdivision at the expense of Plaintiffs' Patti Jo Neighborhood.

A plurality of the Justices in *Miranda* argued that there are no special pleading requirements for an intent element beyond those already existing in the rules of civil procedure and case law.[4] The claim in *Miranda* arose out of a camper who was injured when a tree limb fell on her at a state park. The plaintiff was obligated to validly plead gross negligence to overcome the Texas Department of Wildlife and Parks' sovereign immunity. 133 S.W.3d at 225. The plaintiff there alleged that the Department "knew of the dangers of its falling tree branches, failed to inspect, failed to prune, failed to alleviate or remove the danger, and consciously and deliberately failed to warn Plaintiffs of the extremely dangerous condition . . . . " *Id*. at 221. From this and like allegations, the plaintiff alleged that the Department's conduct was "willful, wanton, or grossly negligent." *Id*. A plurality of the court held these allegations sufficient to plead a gross negligence claim. *Id* at 230.[5]

The plurality rejected the contention from one of the dissenting justices that the allegations were conclusory and did not assert enough specific facts to allege the subjective

---

[4] Section III C (1) of the *Miranda* opinion addresses the sufficiency of the pleadings. That section of the opinion garnered only four votes and is therefore a plurality opinion. We acknowledge that a plurality opinion is of limited precedential value and would only control the results in identical cases. *U. of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176-77 (Tex. 1994). However, while "not a binding precedent" it is still the "considered opinion" of four Justices and "should obviously be the point of reference for further discussion of the issue." *See Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *see also State v. Hardy*, 963 S.W.2d 516, 519 (Tex.Crim.App. 1997)("we may look to those [plurality] opinions for their persuasive value."). In this instance, we choose to follow the reasoning of the plurality regarding pleading of the intent element.

[5] A majority also held, however, that the plaintiffs failed to present any evidence to support these allegations and it consequently dismissed the suit. *Id*. at 221. Unlike *Miranda*, there is no jurisdictional evidence in our record which would have the trial court, or this Court, decide if the Appellees can raise a fact issue as to any of their intent allegation.

awareness element of a gross negligence claim. *Id*. The dissent's pleading standard, according to the plurality, would require more than would the rules of civil procedure and existing case law. *Id*., *citing* TEX.R.CIV.P. 45, Tex.R.Civ.P. 47, *Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988), and *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981). The procedural rules and the case law interpreting them require that pleadings give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved. *Id*. They would not require a plaintiff to set out in the pleadings all the evidence upon which the plaintiff relies to establish an asserted cause of action. *Id*.

We appreciate that the denial of Socorro's plea to the jurisdiction will subject it to the expense and burden of discovery into its mental processes for the 2009 diversion ditch project, and for its decision to funnel water across Thunder Road in 2013. Our record includes nothing with regard to who the decision maker was for those actions, or the extent of relevant documentary evidence. But certainly if it turns out that the pleading was made in bad faith, Socorro is not without remedy. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 9.001-.014 (West 2002)(providing for sanctions, including the striking of pleadings, when a pleading is determined to be groundless and brought in bad faith); TEX.CIV.PRAC.&REM.CODE ANN. §§ 10.001-.006 (providing for monetary sanctions when a pleading is filed without evidentiary support or is unlikely to have such support after reasonable discovery); TEX.R.CIV.P. 13 (providing for an appropriate sanction under Rule 215 for pleadings brought in bad faith or that are groundless and brought for purposes of harassment); TEX.R.CIV.P. 91a (providing for the dismissal of causes of action having no basis in law or fact).

**2013 Temporary Embankments**

Socorro further contends its actions in 2013 are not a taking because the petition alleges only a single event of flooding, and it asserts Texas law would require allegations of recurrent

flooding.  Citing *Tarrant Regl. Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004), Socorro relies on its language that "a single flood event does not generally rise to the level of a taking." *Id*.  *Gragg* also states that "[i]n the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur.  . . .  The recurrence requirement assures that the government is not held liable for taking property when a project's adverse impacts, and by implication its benefit to the public, are too temporal or speculative to warrant compensation." *Id*.

The discussion of multiple flooding events in *Gragg*, however, needs to be read in the context of that case.  The issue in *Gragg* was whether *following a trial on the merits* the plaintiffs had presented legally sufficient evidence of causation, damages, and intent. *Id*. at 549. Evidence of multiple flood damages was germane to all three issues. *Id*. at 552, 555, 558. *Gragg* did not address pleadings requirements, and its language stops short of requiring multiple flooding events in every case. *Id*. at 555 ("a single flood event does not generally rise to the level of a taking.").  To be sure, multiple similar floods caused by the same governmental actions lend much more credence to proof of the required intent.  But we cannot say it is the only means to establish such intent.

*Gragg* also cites *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (1961) in support of its recurrent flood discussion. *Id*. at 555.  In that case, two city plants were damaged by the silting of the Brazos River.  One plant was flooded on multiple occasions, and one plant was damaged a single time. The court in *Brazos River Authority* noted that:

> [T]he safer rule to follow is one requiring the plaintiff in actions such as this to establish definitely by evidence above the dignity of conjecture that the damage claimed is the result of a repeated and recurring injury rather than a sporadic one. Until a plaintiff is in position so to establish the repetitious nature of the injury, he should be confined in his demand for damages to those flowing directly from the single injury or flooding.

12

*Id*. at. 180. *Brazos River Authority* thus contemplates that a plaintiff might pursue at least a claim for damages based on a single flood event. We said as much in *Mazie's* and expressly rejected the contention that multiple flooding events were required. 408 S.W.3d at 25.

In *Mazie's*, a commercial property owner filed suit over damage from the 2006 El Paso rains. It contended that the City's approval of the construction of a dam in the 1950s, approval of rechanneled flow paths over the years, and the maintenance and operation of the resulting culverts, drains, and dam, lead to the destruction of its buildings in 2006. *Id*. at 20. As here, the City of El Paso contended that a single flooding event was insufficient to make out a takings case. *Id*. at 24. In rejecting that contention, we agreed with an earlier Corpus Christi decision finding that recurrence goes to the merits of the plaintiff's claims and is not a pleading requirement to invoke the trial court's jurisdiction. *Id*. at 25, *citing Doss v. City of Victoria,* No. 13-07-00306-CV, 2007 WL 4442616 (Tex.App.--Corpus Christi-Edinburg 2007, no pet.)(mem. op.). Socorro attempts to distinguish *Mazie's* because the dam, ponds, and other drainage structures were permanent, as opposed to the temporary embankments that Socorro constructed during the 2013 rains. We see this as a distinction without a difference. Assuming a governmental entity is substantially certain that an embankment it erects will damage a person's property, whether the embankment is temporary or permanent is of little consequence to the aggrieved property owner. [6]

The cases that Socorro relies on do not convince us that we should retreat from *Mazie's*. Socorro cites the Federal Court of Claims decision in *Singleton v. United States,* 6 Cl.Ct. 156, 162-63 (Cl.Ct. 1984) which states that "[i]t is well established that the critical element of an

---

[6] The parties at oral argument disputed whether the channel across Thunder Road is permanent or whether it is only erected from time to time. The record contains no evidence one way or the other, and the Second Amended Petition merely recites that the sand berms were constructed and that the flooding will continue for any future storm of the same magnitude. If the permanence of the structure were the deciding issue, we would remand the case to allow the Appellees the opportunity to replead the case and clarify the nature of the channel across Thunder Road. But we hold that whether a structure that damages the Appellees' property is temporary or permanent is not determinative, so long as Appellees can plead, and eventually prove the element of intent.

inverse condemnation taking in a flooding case is that of inevitable recurring floods." Under the federal standard, courts have found that "one, two or three floodings by themselves do not constitute a taking." *Natl. By-Products, Inc. v. U. S.*, 405 F.2d 1256, 1273 (Ct.Cl. 1969). Under federal decisional law, flood cases require permanent or inevitable recurring floods to establish a constitutional takings, anything less is deemed only a tort. *Big Oak Farms, Inc. v. U.S.*, 105 Fed.Cl. 48, 54 (Fed. Cl. 2012). At the core of this rule is the federal government's principle "that the government is not liable under the Fifth Amendment for 'consequential damages' caused by its lawful activities." *Id.*, *citing Natl. By-Products*, 405 F.2d at 1273 (which notes the consequential damages principle "is necessarily a somewhat flabby standard which has taken on meaning only through developing case law."). The Texas Supreme Court in *Gragg* cited to *Singleton*, and other federal court of claims decisions, but only as a "similar" standard. *Gragg*, 151 S.W.3d at 555. By not adopting multiple flooding events as a requirement for every case, we believe *Gragg* stopped short of wholesale engrafting the federal rule onto Texas takings claims.

Socorro also relies on several Texas cases. In *City of Van Alstyne v. Young*, 146 S.W.3d 846, 850 (Tex.App.--Dallas 2004, no pet.) the court held that a city's plea to the jurisdiction should have been granted when the jurisdictional evidence demonstrated that a power outage damaged a pumping system, thus causing a sewage backup into the plaintiff's property. The court noted the *Gragg* single occurrence language, but its decision was based on the lack of evidence of intent. "The City's knowledge of alleged problems with the sewer pumps, however, is not the same as knowledge that their decision not to replace the pumps would result in a flood of the Youngs' home." *Id.* at 850. *Young* is also a case where the court had jurisdictional evidence before it, and as we agreed in *Maize's*, recurrent flooding can be important evidence for proving the claim. It is not in our view a pleadings requirement.

14

Socorro also relies on *Toomey v. Texas Dept. of Transp.*, 01-05-00749-CV, 2007 WL 1153035 (Tex.App.--Houston [1st Dist.] Apr. 19, 2007, no pet.)(memo. op.). In that case, the court affirmed the dismissal of the plaintiffs' complaint based on the failure to plead more than a single flooding event. The plaintiffs complained of the construction of a drainage ditch between a state highway and their property which caused flooding of their land on a single occasion. To the extent *Toomey* stands for the proposition that a plaintiff must allege more than a single flooding event, we decline to follow it. Assuming a governmental entity has the requisite intent as outlined in *Gragg*, it should not be accorded one free bite (or as here, one free flood).

Socorro also relies on *Evatt v. Texas Dept. of Transp.*, 11-05-00031-CV, 2006 WL 1349352, at *4 (Tex.App.--Eastland May 18, 2006, pet. denied)(mem. op.) which affirmed the dismissal of a claim when the plaintiff alleged only that the state actor intentionally placed concrete barriers on an the adjacent highway, and not that the State intended by this action to damage the plaintiff's property. 2006 WL 1349352, at *4 ("The homeowners have not alleged that the Department either knew or was substantially certain that their homes would flood as a result of the construction methods utilized by the Department on the nearby construction project."). We view this defect in the pleadings as the dispositive issue in the case. The court's discussion of recurrent flooding related to whether the plaintiffs should be permitted to replead the case. The court concluded that under the facts of that case, including that there was one single flooding event, the homeowners could "not plead a takings claim in good faith under the circumstances present in this appeal." 2006 WL 1349352, at *4. Again, to the extent *Evatt* stands for the proposition that a plaintiff must always allege more than a single flooding event, we decline to follow it.

Finally, in its reply brief, Socorro suggests the Texas Supreme Court's recent decision in *City of Houston v. Carlson*, 451 S.W.3d 828 (Tex. 2015) changes the approach we must take on

15

reviewing the pleadings. We disagree. The court in *Carlson* affirmed the dismissal of a regulatory taking claim because the theory that the plaintiffs presented -- a regulatory taking premised on the denial of procedural due process -- was simply not actionable. Instead, a regulatory takings claim requires the plaintiff to ultimately prove a regulation "so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.* at 831, *quoting Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). The plaintiff in *Carlson* never made that claim. *Id*. at 831. In that way, the case is no different from *Evatt* where the plaintiffs simply failed to plead the appropriate standard. The question raised here is whether multiple flooding events are required to prove the intent element for a takings claim in a flooding case. While the existence of multiple flooding events might well aid the plaintiff in proving their case, we reject the notion that they are always required. We accordingly overrule Issues One and Two.

### *Harris Flood Control Dist. v. Kerr*

Following oral argument in this case, the Texas Supreme Court handed down its opinion on rehearing in *Harris County Flood Control Dist. v. Kerr*, ___ S.W.3d ___, 2016 WL 3418246 (Tex. June 17, 2016)(op. on rehearing). Socorro contends the case is dispositive of the issues before us. We disagree. *Kerr* does bear some similarities to the dispute here in that both cases involve a group of homeowners aggrieved by flooding they claimed was caused by a governmental entity. For the most part, however, the similarities end there.

A central allegation made by the homeowners in *Kerr* was the defendants' failure to implement a flood control plan. 2016 WL 3418246 *3. The Texas Supreme Court on rehearing held, however, that a takings claim must assert an action by the governmental entity, and not merely inaction. 2016 WL 3418246 *4. While the Appellees here reference in their petition a flood control plan which was never implemented, they expressly disclaim that failure as the basis

16

for the lawsuit. Instead, the Appellees here focus on the construction by Socorro of a diversion ditch and berm. The *Kerr* opinion specifically noted that there was no live allegation of a structure constructed by the governmental entity that re-directed the flow path of the water. 2016 WL 3418246 *2 n.5 (explaining how homeowners had abandoned any claim that control structures and a dam were the cause of their injury).

The only affirmative action the defendants in *Kerr* took was to approve development of other residential developments which in turn increased the risk to others in the same watershed. 2016 WL 3418246 *3. The watershed itself was 110 square miles and the various plaintiffs were spread out in checkerboard fashion over several miles. 2016 WL 3418246 *8. The court concluded that "even under the most generous reading of the record," the defendants did not know which other properties might be flooded because of this additional development. 2016 WL 3418246 *4. As we excerpt the Appellees' pleadings above, they allege that the diversion of water in 2013 was "towards" their neighborhood and that Socorro was substantially certain that its actions would flood the Patti Jo neighborhood.

The most important distinction in the cases is that procedurally *Kerr* arose after a trial court ruling on a combined motion for summary judgment and plea to the jurisdiction. The Texas Supreme Court was able to consider the evidence of motive, and not merely the pled allegations. Considering that evidence, the court concluded that the homeowner did not present a cognizable claim where:

> (1) the County never desired to cause flooding, but desired only the opposite, (2) it undertook significant efforts to prevent flooding, spending tens of millions of dollars over many years, (3) the County never intended, as part of a flood-control plan, to use the homeowners' particular properties for detention ponds, drainage easements, or the like, (4) the only affirmative conduct allegedly causing the flooding was approval of private development, (5) the homeowners offered no proof that the County was substantially certain its approval of development would result in the flooding of the homeowners' particular lots, and (6) even by the homeowners' reckoning the flooding resulted from multiple causes--Acts of God, the activities of other defendants, the alleged failure to complete the [flood

17

prevention plan], and the approval of private development. We have never recognized a takings claim under such attenuated circumstances.

2016 WL 3418246, at *9. Should this case ever return to us on a *factual* record, we would consider the same factors. At this point, however, there is no evidence in this record, one way or the other, on any of these matters.

## NUISANCE

Both parties to this appeal agree that the resolution of the nuisance claim (raised through Issue Three) turns on our resolution of the takings claim. Because we hold the Appellees adequately pled their takings claim, we overrule Issue Three and affirm the trial court's refusal to dismiss the nuisance claim.

## CONCLUSION

We emphasize that this case comes to us only on the pleadings and that no jurisdictional evidence was submitted to contest the claims asserted here. In most of the decisions cited in this opinion, the courts reviewed either evidentiary pleas to the jurisdiction,[7] motions for summary judgment,[8] or records from a trial on the merits.[9] We deal with no more than the four corners of the Plaintiffs' Second Amended Petition. And our decision means no more than the Appellees have sufficiently pleaded claims which allow them to now attempt to prove those allegations. Skepticism over whether they will be able to meet the substantial burden that they face is simply not a justification for denying them an opportunity to meet their evidentiary burden.

---

[7] *See e.g. City of El Paso v. Mazie's L.P.*, 408 S.W.3d 13, 16 (Tex.App.--El Paso 2012, pet. denied)(affidavits submitted with plea jurisdiction and response).

[8] *Harris County Flood Control Dist. v. Kerr*, ___ S.W.3d ___, 2016 WL 3418246 at *3 (Tex. June 17, 2016) (combined plea to the jurisdiction and summary judgment).

[9] *See e.g. City of San Antonio v. Pollock*, 284 S.W.3d 809, 815 (Tex. 2009)(trial on the merits).

18

September 14, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment