COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| WENDY YOUNGER, | § | |
| | | No. 08-15-00333-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 210th District Court |
| EL PASO COUNTY EMERGENCY | § | |
| SERVICES DISTRICT NO. 2 and EL | | of El Paso County, Texas |
| PASO COUNTY, TEXAS, | § | |
| | | (TC#2014-DCV3923) |
| Appellees. | § | |

## **O P I N I O N**

Wendy Younger appeals the trial court's granting of Appellees' pleas to the jurisdiction in her suit for a takings claim under the Texas Constitution and the Private Real Property Rights Preservation Act ("PRPRPA"). In two issues, Younger contends: (1) the trial court should not have granted El Paso County Emergency Services District No. 2's plea to the jurisdiction because the District made her property unmarketable when it refused to sign her replacement deed, thus constituting a taking under both the Texas Constitution and the PRPRPA; and (2) the trial court should not have granted El Paso County's plea to the jurisdiction because the County made her property unmarketable when it lost her original deed, failed to record it, and failed to acquire a replacement deed, thus constituting a taking under both the Texas Constitution and the PRPRPA. For the following reasons, we affirm.

**BACKGROUND**

Wendy Younger purchased the lot at issue in the Montana Vista area in 1997. She purchased the property as part of an agreement between the Paso View Christian Association and the Montana Vista Volunteer Fire Department. Due to a rash of fires and resulting property loss in the area, the Association donated two lots on Kyle Road to the Fire Department in exchange for the department building a fire station on the lots. The Association also offered to sell two adjacent lots to any two members of the volunteer fire department who would be willing to build homes on the lots and operate the fire station. Younger, who was a member of the volunteer firefighters, agreed to work the station and purchased one of the lots with her husband for $4,700.

The agreement, in part, was that the County would construct a paved road to allow the large fire engine to access the station. To effectuate the road construction, twenty feet from the front of each of the four lots—including Younger's—was donated back to the County. The County Attorney's Office drew up the deeds transferring the land to the County for ten dollars per deed. The owners signed and notarized the deeds and then hand carried them back to the County Attorney's Office in July 1997. The El Paso Road and Bridges Department built and paved the road a few months later and maintained it at its expense. Younger, her husband, and two other families operated the fire station for the next seventeen years.

In December 2013, Younger was attempting to sell her property when she discovered that not one of the deeds transferring the twenty-foot strips to the County had been recorded. Without the transfer deeds being recorded, Younger could not get a title policy for her property and thus could not sell it to her prospective buyer. She attempted to get her deed from the Roads and Bridges Department, but they told her they could not locate it. She then tried requesting a copy

2

from El Paso County Emergency Services District No. 2, but the District could not locate the deed either. Ultimately, Younger went to the County Attorney's Office, who also could not locate her missing deed but offered to recreate the deeds for all owners at no charge. The deeds for three of the property owners were re-signed in April 2014 and recorded, and Younger and the other owners re-donated the front twenty feet of their properties to the County. The problem was that if the fourth deed—the one for District No. 2's property—was not re-resigned and re-donated to the County, Younger's property would still be technically landlocked, and she would still be unable to obtain a title policy.

But getting this accomplished proved to be easier said than done. In order for District No. 2 to sign the warranty deed, the matter had to be placed before the district's board and approved. The issue was placed on the agenda for June 2014, but the board decided not to approve the signing of the deed until the original deed could be located. Unable to obtain the title policy, Younger leased her property to her prospective buyer in August and moved to Arizona. Ultimately, the board passed a motion in May 2015 to sign the new deed and re-donate the strip to the County.

Younger, however, was not idle during the delay. After a failed attempt to negotiate a re-signing and donating with the District, she filed suit against District No. 2 and El Paso County in December 2014. Her original petition alleged the following causes of action: (1) prescriptive easement; (2) easement by necessity; (3) tortious interference with prospective relations; and (4) private nuisance. El Paso County and District No. 2 filed pleas to the jurisdiction in March and May 2015, respectively, claiming governmental immunity from suit. Younger responded to the pleas in September and the County and District filed replies. On October 6, 2015, Younger filed an amended petition adding a takings claim under the Private Real Property Rights Preservation

3

Act. The following day, the trial court granted the County's and the District's pleas to the jurisdiction. The trial court subsequently denied a motion by Younger for reconsideration. This appeal followed.

## DISCUSSION

### El Paso County Emergency Services District No. 2

In her first issue, Younger asserts the trial court erred in granting El Paso County Emergency Services District No. 2's plea to the jurisdiction because she pleaded sufficient facts to establish a valid takings claim. Specifically, she argues that because her amended petition stated the District made her property unmarketable when it refused to sign her replacement deed, her pleadings showed sufficient facts to establish a taking under both the Texas Constitution and the Private Real Property Rights Preservation Act ("PRPRPA").

### *Standard of Review*

"The State of Texas is considered 'inviolably sovereign,' and generally has sovereign immunity from suits seeking money damages." *Luttrell v. El Paso County*, --S.W.3d--, No. 08-16-00090-CV, 2018 WL 3583930, at *5 (Tex.App.--El Paso July 26, 2018, no pet. h.)(op. on reh'g). A political subdivision of the State—such as a county or other administrative district—also enjoys immunity derived from the State's sovereign immunity, but this immunity is referred to as "governmental immunity." *Id*. Both sovereign immunity and governmental immunity defeat a trial court's subject matter jurisdiction. *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). The exception is when the State either consents to suit or otherwise acts outside its sphere of immunity. *Shamrock Psychiatric Clinic, P.A. v. Texas Dep't of Health & Humans Services*, 540 S.W.3d 553, 559 (Tex. 2018). A plaintiff may demonstrate a

4

waiver of immunity by pointing to either an express legislative waiver or a constitutional provision permitting the plaintiff to bring a claim against the governmental unit. *Miranda*, 133 S.W.3d at 230. Whether the pleader has alleged facts affirmatively demonstrating a trial court's subject matter jurisdiction is a question of law that we review *de novo*. *City of Socorro v. Campos*, 510 S.W.3d 121, 127 (Tex.App.--El Paso 2016, pet. denied). In reviewing the pleadings, we are required to construe them liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226.

*Analysis*

**Takings Claim Under the Texas Constitution**

Article 1, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX.CONST. art. I, § 17. To establish a takings claim under the Texas Constitution, a plaintiff must prove: (1) the government intentionally performed certain acts; (2) that resulted in the plaintiff's property being taken, damaged, or destroyed; (3) for public use. *Gen. Services Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Campos*, 510 S.W.3d at 126. The action performed by the governmental entity must be intentional; governmental inaction is not sufficient. *Campos*, 510 S.W.3d at 133. Further, a takings claim cannot rest on mere negligence—the governmental entity must know to a substantial certainty that the harm will occur. *Id*., at 126 (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997)). That is, "awareness of the mere possibility of damage is no evidence of intent." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009).

Here, Younger asserts the necessary intentional act occurred when District No. 2 failed to

5

pass a resolution to sign the replacement deed at the June 2014 board meeting. This caused her title to be unmarketable because she could not obtain a title policy for her property, thus "imposing substantial and significant limitations" on her use of the property. District No. 2 argues Younger did not raise a valid takings claim under the Texas Constitution in the trial court, and her issue should therefore be waived. In her live pleading, she made reference to the U.S. Constitution and Texas Constitution under a section entitled "Taking in Violation of the Private Real Property Rights Preservation Act." In a single paragraph, her pleading stated as follows:

> 57. Defendant's El Paso County Emergency Services District No. 2 and the El Paso County by their government action affected the Plaintiff's private real property in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article 1 Texas Constitution.

Although the Texas Constitution is mentioned, the language quoted is the mirror image of the PRPRPA's statutory definition of a taking:

> (5) 'Taking' means:
>
> (A) a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article I, Texas Constitution;

TEX.GOV'T CODE ANN. § 2007.002(5)(A)(West 2016).

As noted, we are required to construe the pleadings liberally and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. Even assuming Younger's pleading can be construed as asserting a constitutional takings issue, her argument still fails because she has failed to plead sufficient facts to demonstrate a takings claim. Her argument against District No. 2 centers on the District's failure to act on signing the replacement deed and re-donating the property to the

6

County.   As our Court has previously held, "[a] governmental entity's failure to act, even in the face of evidence that curative measures are necessary to prevent future damage, rise only to the level of a negligence claim, and acts of mere negligence will not support a taking claim."  *City of El Paso v. Ramirez*, 349 S.W.3d 181, 187 (Tex.App.--El Paso 2011, no pet.); *see also Likes*, 962 S.W.2d at 505.   Accordingly, District No. 2's decision to not sign the replacement deed—even in awareness of Younger's inability to obtain a title policy if it failed to act—cannot be the grounds on which a valid takings claim rest.   Thus, even if Younger raised a takings issue in the proceeding below, the trial court's granting of District No. 2's plea to the jurisdiction to that extent was proper.

### The Private Real Property Rights Preservation Act Claim

The Texas legislature enacted PRPRPA in June 1995, creating a statutory takings claim for a property owner whose property value is diminished by at least twenty-five percent as a result of certain governmental actions or whose property is affected in a manner that requires compensation under the U.S. Constitution or Section 17 or 19, Article I, of the Texas Constitution.   TEX.GOV'T CODE ANN. § 2007.002(5).   The statute, however, is only applicable to the following governmental actions:

(1) the adoption or issuance of an ordinance, rule, regulatory requirement, resolution, policy, guideline, or similar measure;

(2) an action that imposes a physical invasion or requires a dedication or exaction of private real property;

(3) an action by a municipality that has effect in the extraterritorial jurisdiction of the municipality, excluding annexation, and that enacts or enforces an ordinance, rule, regulation, or plan that does not impose identical requirements or restrictions in the entire extraterritorial jurisdiction of the municipality; and

(4) enforcement of a governmental action listed in Subdivisions (1) through (3), whether the enforcement of the governmental action is accomplished through the use of permitting, citations, orders, judicial or quasi-judicial proceedings,

7

or other similar means.

TEX.GOV'T CODE ANN. § 2007.003(a).

Sovereign immunity (and thus governmental immunity) is expressly waived to the extent of liability as outlined above. TEX.GOV'T CODE ANN. § 2007.004. The PRPRPA further mandates that a suit under the statute be filed within 180 days after the property owner knew or should have known that the governmental action restricted or limited the owner's right in the property. TEX.GOV'T CODE ANN. § 2007.021. The requirement that the claim be brought within 180 days is jurisdictional. *Hidalgo County v. Dyer*, 358 S.W.3d 698, 707-08 (Tex.App.--Corpus Christi-Edinburg 2011, no pet.); *State v. BP America Production Co.*, 290 S.W.3d 345, 367 (Tex.App.--Austin 2009, pet. denied).

As noted above, Younger asserts District No. 2's failure to pass a resolution to sign the replacement deed at the June 2014 board meeting caused her title to be unmarketable because she could not obtain a title policy for her property. She claims the board's refusal to sign the replacement deed constitutes a governmental action under Section 2007.003(a). Younger does not claim a physical invasion, and therefore is attempting to assert a regulatory taking under the first category of Section 2007.003(a). TEX.GOV'T CODE ANN. § 2007.003(a). Because she included this assertion in her amended petition, she claims the trial court clearly erred in granting District No. 2's plea to the jurisdiction. Even generously assuming the board's temporary decision to not sign the replacement deed constituted a regulatory action, the District correctly points out she has a more fundamental defect in her pleading: she failed to raise the PRPRPA assertion in time. The statute requires a suit under the PRPRPA to be brought no later than the 180th day after the day she knew or should have known about the governmental action affecting

8

her property. TEX.GOV'T CODE ANN. § 2007.021. Younger first raised her PRPRPA claim in her amended pleading in October 2015 but is basing that claim on the board meeting held in June 2014. Because the PRPRPA only waives immunity to the extent provided for in the statute, the requirement that the claim be brought within 180 days is jurisdictional. *Dyer*, 358 S.W.3d at 707-08; *BP America Production Co.*, 290 S.W.3d at 367. Accordingly, the trial court lacked subject matter jurisdiction and properly granted District No. 2's plea to the jurisdiction as to Younger's PRPRPA claim.

Further, because the entirety of her claim rests on District No. 2's temporary failure to sign the replacement deed, Younger's pleadings affirmatively negate jurisdiction. When the pleadings affirmatively negate the existence of jurisdiction, granting the plaintiff an opportunity to amend is unnecessary. *Miranda*, 133 S.W.3d at 227. Even if her pleadings did not affirmatively negate jurisdiction, Younger already had an opportunity to amend her pleadings after the District filed its plea, and her pleadings still did not cure the jurisdictional defect. When a plaintiff has been afforded a reasonable opportunity to amend her pleadings to cure a jurisdictional defect and still fails to allege facts that would constitute a waiver of immunity, dismissing the suit with prejudice is proper. *Sepulveda v. County of El Paso*, 170 S.W.3d 605, 616-17 (Tex.App.--El Paso 2005, pet. denied). Accordingly, Younger's first issue is overruled.

### El Paso County

In her second issue, Younger asserts the trial court erred in granting El Paso County's plea to the jurisdiction because she pleaded sufficient facts to establish a valid takings claim. Specifically, she claims the County made her property unmarketable when it lost her original deed, failed to record it, and failed to acquire a replacement deed, thus constituting a taking under both

9

the Texas Constitution and the PRPRPA.

### *Standard of Review*

As noted above, we review *de novo* whether the pleader has alleged facts affirmatively demonstrating a trial court's subject matter jurisdiction. *Campos*, 510 S.W.3d at 127. In reviewing the pleadings, we are required to construe them liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226.

### The Takings Claim Under the Texas Constitution

To establish a takings claim under the Texas Constitution, a plaintiff must prove: (1) the government intentionally performed certain acts; (2) that resulted in the plaintiff's property being taken, damaged, or destroyed; (3) for public use. *Gen. Services Com'n*, 39 S.W.3d at 598. A takings claim cannot rest on mere negligence, and the governmental entity must know to a substantial certainty that the contemplated harm will occur from its intentional act. *Campos*, 510 S.W.3d at 126.

Younger asserts the County committed a taking of her property by failing to record her original deed, losing it, and failing to replace the lost deed, which resulted in her property being temporarily unmarketable. As the County correctly points out, however, she does not assert that any of these acts were intentional. In order to state a valid takings claim under the Texas Constitution, Younger was at least required to assert an intentional act by the County. *Gen. Services Com'n*, 39 S.W.3d at 598. Instead, she has asserted at most a negligence claim against the County for failing to record and subsequently losing her original deed. As for her assertion regarding the County's failure to replace her deed, she only asserts a failure to act—not an action—and as already noted above, failure to act is a negligence claim, not a taking. *Ramirez*, 349 S.W.3d

10

at 187. Thus, Younger has failed to raise a valid takings claim under the Texas Constitution, and the trial court's granting of El Paso County's plea to the jurisdiction to that extent was proper.

## The Private Real Property Rights Preservation Act Claim

Younger asserts the County made her property unmarketable when it lost her original deed, failed to record it, and failed to acquire a replacement deed, thus constituting a taking under the PRPRPA. But like her PRPRPA claim against District No. 2, the requirement that her claim against the County be brought within 180 days is jurisdictional because PRPRPA only waives immunity to the extent provided for in the statute. TEX.GOV'T CODE ANN. § 2007.021; *Dyer*, 358 S.W.3d at 707-08; *BP America Production Co.*, 290 S.W.3d at 367. Younger first added her PRPRPA claim against the County in her first amended petition dated October 6, 2015. As she stated in her pleadings, Younger discovered the deeds were missing in December 2013. Further, her pleadings state that when she went to inquire about the missing deeds with the County Attorney's Office, she was offered replacement deeds at no charge. Although she provides no date for this offer, she states these deeds were eventually produced and that one of them was the subject of District No. 2's board meeting in June 2014. Accordingly, as with her claim against District No. 2, her PRPRPA claim against the County was untimely. Because the 180-day requirement is jurisdictional, the trial court lacked subject matter jurisdiction and properly granted the County's plea. *Dyer*, 358 S.W.3d at 707-08. Further, since her claims against the County rest on negligence, Younger's pleadings affirmatively negate jurisdiction and granting her an opportunity to amend is unnecessary. *Miranda*, 133 S.W.3d at 227. Younger's second issue is overruled.

## CONCLUSION

11

Having overruled Younger's two issues on appeal, the judgment of the trial court is affirmed.

August 24, 2018
                              YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., (Not Participating)