

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | No. 08-21-00001-CV |
| | § | |
| WINDSTAR TRUCKING, LLC, | § | AN ORIGINAL PROCEEDING |
| | § | |
| RELATOR. | § | IN MANDAMUS |
| | § | |

## **O P I N I O N**

This mandamus requires us to decide two legal questions: (1) is making an illegal left hand turn that violates the Texas Traffic Code a "criminal act" under Chapter 33 that permits the designation of unknown responsible third parties in civil cases; and (2) can a defendant wishing to designate an unknown person plead adequate facts to support the designation in their motion for leave to designate, and not their answer? We conclude that the answer to the first question is "Yes," and the answer for the second question is "Yes" as well, but only if certain other information specifically required to be pleaded in the answer is in the answer. Consequently, we grant the mandamus to allow Relator, Windstar Trucking, LLC, to designate an unknown responsible third party.

# I. BACKGROUND[1]

The lawsuit below arises from a traffic accident in which a Windstar truck (an International tractor, pulling a commercial tanker trailer) driven by Javier Jimenez swerved out of its lane. The truck then struck a Volkswagen Passat driven by Michael Dubrule, along with passenger Rashon El-Amin Peterson. Peterson died from the collision and Dubrule was injured. Peterson's estate and representatives (the Petersons), along with Dubrule, sued Windstar and its driver, Jimenez.

Windstar contends that an unknown person driving a "white pickup truck" caused or contributed to cause the accident. Its argument is based on these asserted facts: The accident occurred at the intersection of Zaragosa and Rich Beam in El Paso, Texas. At the point of the accident, Zaragosa has four lanes in the northbound direction. The far left lane is a left hand turn lane only. The two middle lanes allow drivers to proceed northbound across Rich Beam (lanes #1 and #2). The far right lane is a right hand turn lane only. The Windstar truck was proceeding northbound in lane #1. The Dubrule vehicle was also northbound, but in lane #2. Windstar contends that a white pickup truck was also northbound in lane #1 immediately in front of the Windstar tractor-trailer. Even though the light facing northbound traffic was green, the white pickup came to a sudden stop and then executed a left hand turn from lane #1 (and not from the designate left hand turn lane). Windstar contends that to avoid hitting the white pickup truck, Jimenez was compelled to swerve into the path of the Dubrule vehicle in lane #2.

Based on our record, Windstar presently cannot identify this other driver, and can only say the person was driving a white pickup truck. Windstar intended to develop this defense by naming a "John Doe" as a responsible third party, which in turn might allow the jury to assign a

---

[1] The background facts are taken from the pleadings and contentions of the parties below. All have yet to be assessed by a trier of fact.

percentage of responsibility to the John Doe (if evidence convinces the jury that there was in fact a John Doe that was responsible for the accident). Following several hearings, the Honorable Ruben Morales, Judge of the County Court at Law No. 7 of El Paso County, denied Windstar's Motion for Leave to Designate "John Doe" as a responsible third party. Windstar now seeks mandamus relief, requesting that we direct the trial court to vacate its denial order and enter a new order granting the motion for leave to designate the John Doe as a responsible third party.

## II. STANDARD OF REVIEW

Mandamus is an extraordinary remedy only available when (1) a trial court clearly abuses its discretion, and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). As for the first requirement, a trial court abuses its discretion if it acts arbitrarily, capriciously, and without reference to guiding rules or principles, or if its decision is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). But "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts," *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992) "even when the law is unsettled[.]" *In re Prudential*, 148 S.W.3d at 135.

As for the second mandamus requirement, when a trial court erroneously denies a party's motion for leave to designate a responsible third party, mandamus relief is the appropriate remedy. *In re Mobile Mini, Inc.*, 596 S.W.3d 781, 787-88 (Tex. 2020) (orig. proceeding), *citing In re Coppola*, 535 S.W.3d 506, 507-09 (Tex. 2017) (orig. proceeding). Mandamus in this context is generally appropriate because "allowing a case to proceed to trial without a properly requested responsible third party designation 'would skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of the relator's defense in ways unlikely to be

apparent in the appellate record.'" *Id.*, *quoting In re Coppola*, 535 S.W.3d at 509).

## III. RESPONSIBLE THIRD PARTIES

Subject to some exceptions, a tortfeasor in Texas is generally responsible only for their own proportionate share of responsibility in causing a loss. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 33.013(a).[2] To execute that policy preference, section 33.003 of Civil Practices & Remedies Code allows the trier of fact to determine the proportionate responsibility for each claimant, defendant, settling person, and "responsible third party." *Id.* § 33.003. A "responsible third party" is a person or entity not named as a party in the litigation but who nevertheless may bear responsibility for the claimant's injury. *Id.* § 33.011(6); *New Hampshire Ins. Co. v. Rodriguez*, 569 S.W.3d 275, 298 n.9 (Tex.App.--El Paso 2019, pet. denied).

To designate a *known* responsible third party, a defendant must file a motion for leave to designate the person or entity as a responsible third party. TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(a). Unless another party files an objection to the motion for leave on or before the fifteenth day after service of the motion, the trial court shall grant the requested leave to designate. *Id.* § 33.004(f). Furthermore, even if an objection to the motion for leave is timely filed, the trial court still must grant leave to designate unless the objecting party can show: (1) the defendant failed to plead sufficient facts regarding the alleged responsibility of the person based on the Texas Rules of Civil Procedure's notice pleading requirement; and (2) after an opportunity to replead, the defendant still failed to plead sufficient facts regarding the alleged responsibility of the person. *Id.* § 33.004(g); *see also In re Cordish Co.*, 617 S.W.3d 909, 913-14 (Tex.App.--Houston

---

[2] Section 33.013(b) sets out exceptions to this rule, including a defendant assessed greater than 50 percent of the percentage of responsibility and those who commit acts that certain penal statutes criminalize. TEX.CIV.PRAC.& REM.CODE ANN. § 33.013(b)(1), (2)(A)-(N).

[14th Dist.] 2021, orig. proceeding) (referencing the notice pleading standard under TEX.R.CIV.P. 47 as it pertains to pleading facts in a motion for leave to designate a responsible third party); *Pacheco-Serrant v. Munoz*, 555 S.W.3d 782, 793 (Tex.App.--El Paso, 2018, no pet.) (discussing the notice pleading standard in Texas).

Subsection (j) of section 33.004 governs the designation of *unknown* third parties, and provides:

> (j) Notwithstanding any other provision of this section, if, not later than 60 days after the filing of the defendant's original answer, the defendant alleges in an answer filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:
>
> > (1) the court determines that the defendant has pleaded facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;
> >
> > (2) the defendant has stated in the answer all identifying characteristics of the unknown person, known at the time of the answer; and
> >
> > (3) the allegation satisfies the pleading requirements of the Texas Rules of Civil Procedure.

*Id*. § 33.004(j). As we elaborate on below, the procedures to designate known and unknown responsible third parties share some similarities, but also contain notable differences.

Finally, a party seeking to submit the conduct of a responsible third party may have additional hurdles to clear. A party opposing the designation can move to strike the designation after an adequate time for discovery has passed, if "there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage." *Id*. § 33.004(l). And of course, a trial court should not submit the conduct of any actor unless the evidence at trial justifies the submission. *See, e.g*., *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

5

# IV. DISCUSSION

In two issues, Windstar challenges the denial of its designation of the John Doe allegedly driving the white pickup truck. In its first issue, Windstar asserts the trial court abused its discretion by denying its designation of an unknown responsible third party. In its second issue, Windstar asserts it has no adequate remedy for the denial of its designation of an unknown responsible third party.

## A. Designation of the Unknown Driver

The trial court "shall grant" a timely and compliant motion for leave to designate a responsible third party. TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(f), (g), (j); *In re Coppola*, 535 S.W.3d at 507-09. No timing issue is raised for Windstar's motion for leave or answer.[3] Instead, the trial court's order denied Windstar's motion for leave because Windstar "failed to plead sufficient facts to support the motion." Based on the arguments raised below, that alleged failure to plead sufficient facts implicates one of two arguments. The Petersons and Dubrule contended: (1) that Windstar did not allege sufficient facts in its answer (as distinct from its motion for leave); and (2) making an illegal left hand turn as defined by the Texas Traffic Code is not a violation of a criminal law that would support the designation of an unknown person as a responsible third party.[4] How Windstar raised the responsible third party issue is central to the Plaintiff's first objection, so we detour to flesh out the procedural history of the case.

### 1. Procedural history

After suit was filed, Windstar filed its original answer, alleging that the negligence or

---

[3] Windstar's pleadings were all filed within the sixty-day deadline, which fell on October 19, 2020. Windstar filed its original answer on August 19, 2020, its first supplemental answer on September 9, 2020, its motion to designate on September 9, 2020, and its second supplemental answer on September 15, 2020.

[4] The Petersons argued this second issue below and carry it forward only in a footnote in their Response to Windstar's mandamus petition. Because it is raised in the briefing, the record, and in the dissent, we address it at length.

negligence per se of persons not yet a party to the lawsuit contributed to the plaintiffs' damages and injuries. It also contended that its driver confronted a sudden emergency, and any negligence on his behalf is excused. Soon after, Windstar filed its Motion for Leave to Designate "John Doe" as a responsible third party. The relevant portion of the motion for leave states:

> A person commits an offense if the person performs an act prohibited or fails to perform an act required by Subtitle C (Sections 541 to 600) of the Texas Transportation Code. *See* TEX.TRANSP.CODE § 542.301(a). Under the Code, "[t]o make a left turn at an intersection, an operator *shall*: (1) approach the intersection in the *extreme left-handed lane* lawfully available to a vehicle moving in the direction of the vehicle; and (2) after entering the intersection, turn left, leaving the intersection so as to arrive in a lane lawfully available to traffic moving in the direction of the vehicle on the roadway being entered. *Id*. at § 545.101(b) (emphasis added).

> Here, John Doe made a sudden stop and attempted to turn from the number one lane, instead of the designated turning lane (i.e. the extreme left-hand lane), violating Section 545.101(b) of the Texas Transportation Code, a criminal act, forcing Jimenez to evade John Doe and have an accident with Debrule's vehicle. John Doe's violation of the Texas Transportation Code was a or the cause of the loss or injury that is the subject of the lawsuit.

That same day, Windstar filed its first supplemental answer. The answer added the following:

> Defendant would show that the cause of the loss or injury that is the subject of this lawsuit was caused by the criminal act of an unknown person ("John Doe"). Defendant does not know of any identifying characteristics of John Doe at this time, other than the fact that he was driving a white pickup truck on the day of the incident.

The supplemental answer did not include all the information from the motion for leave, including a citation to the criminal statute, the details of how the John Doe violated that statute, and how that violation is claimed to have caused the accident..

The Petersons filed an objection to Windstar's Motion for Leave.[5] The objection argued that Windstar failed to provide "all identifying characteristics" of John Doe or the vehicle he or

---

[5] Dubrule was not a party plaintiff at this point of the case but intervened soon after and generally adopted the Petersons' objections to the motion for leave. Dubrule has also adopted the Petersons' response to the mandamus petition.

7

she was driving. The objection also asserted that Windstar failed to plead sufficient facts to allow the trial court to determine whether there is a "reasonable probability" that the John Doe's acts were criminal. The Petersons specifically complained that Windstar did not specify what statute John Doe violated or provide other details for how John Doe committed a criminal act.

This same argument was reiterated at the first hearing on Windstar's motion. But at the hearing, the Petersons raised a more specific complaint. They contended that the allegation of a specific criminal statute must appear in the answer (as distinct from the motion for leave). Windstar's counsel then offered to "supplement his answer and cite the specific statute that he cited in the motion [for leave]." The trial court then stated it would reconvene the hearing and stated it would be helpful if Windstar amended its answer. Windstar's counsel then clarified with the trial court its concern with the pleading:

> MR. MUNDELL: Your Honor, just to be clear, in my answer the Court might need to cite the specific section of the Texas Transportation Code that we alleged the John Doe violated.
>
> THE COURT: The criminal acts. A little more specificity with respect to the criminal act. So if you cite the section of the Transportation Code that he violated, I guess that would provide the additional specificity.
>
> MR. MUNDELL: Yes, Your Honor, we can do that.

And after the hearing, Windstar filed a second supplemental answer which added this sentence: "Specifically, Defendant would show that John Doe committed a criminal act by violating Texas Transportation Code § 545.101(b)."

On the eve of the second hearing, the Petersons filed a supplemental objection to Windstar's motion for leave. The supplement re-urged the previous objections and added two more challenges. First, the Petersons contended that the Texas Traffic Code provision that Windstar claimed John Doe violated did no more than incorporate a "reasonable person"/negligence standard which would constitute the criminal act required for John Doe

8

designations.[6]  Next, the Petersons claimed that while the supplemental answer now cited the criminal statute, the answer included no substantive factual allegations for how the statute was violated or contributed to the accident.

Following this second hearing, the trial court denied the motion for leave because Windstar "failed to plead sufficient facts to support the motion."   The pleading question before us has two sub issues.   First, was Windstar required to include all its allegations in an answer or could the "facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal" be alleged in its motion for leave?   And second, if we can consider the allegations from both the answer and motion for leave, do they put the Petersons and Debrule on fair notice of the responsible third party allegations being asserted?   We answer both questions "Yes."

### 2.   *The pleaded "facts" can be in the motion for leave*

If Windstar was designating a *known* person or entity, there is no question that a court should consider the pleaded facts in the motion for leave.   Section 33.004(g) governs responsible third party designations for known persons or entities.   Under that section, the trial court is directed to grant a timely filed motion for leave unless an objection is filed that establishes "the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(g)(1).   Case law under that section has looked to the motion for leave to measure compliance with the pleading requirement.

Most recently, the Texas Supreme Court considered whether a defendant met its pleading

---

[6] At the later hearing, the Petersons' counsel explained the argument this way: "He can only designate an unknown criminal actor if the crime is alleged and it's actionable as negligence per se because otherwise it's ordinary negligence. . . . [Section] 545.101 is so incredibly basic that it's essentially the equivalent of the reasonably prudent person standard, which is the default civil standard."

burden to designate a responsible third party under section 33.004(g) in *In re YRC Inc.*, 646 S.W.3d 805, 810 (Tex. 2022) (orig. proceeding) (per curiam). The court held the trial court abused its discretion in finding the pleadings insufficient, and in doing so, looked to the allegations in the motion for leave. *Id.* ("YRC's *motion* clears this bar. . . . The *motion* provides fair notice to Curry of the nature of the controversy, its basic issues, and the type of evidence that might be relevant to Eaton's responsibility for his injuries.") (emphasis supplied).

This Court also recently held that a trial court abused its discretion in concluding a defendant did not meet its fair notice burden—and we looked to the motion for leave to discern what allegations were made against the putative responsible third party. *In re NCS Multistage, LLC*, No. 08-21-00020-CV, 2021 WL 4785743, at *5-7 (Tex.App.--El Paso Oct. 14, 2021, orig. proceeding) ("In their *motion for leave*, Relators include the following facts regarding Aero Lift's alleged responsibility in the failure of the equipment . . . It is sufficient the allegations in the *motion for leave* apprise the RPI of the nature of the potential claims against Aero Lift, and the nature of the evidence relevant to determine to what extent responsibility lies with Aero Lift, if any. . . . We find the *motion for leave* alleges sufficient facts to satisfy Texas's notice pleading standard.") (emphasis supplied); *see also In re Cook*, 629 S.W.3d 591, 594 (Tex.App.--Dallas 2021, orig. proceeding) (mandamus denied) (in deciding the sufficiency of allegations for a 33.004(g) designation: "Two documents—relators' motion to designate a responsible third party and real party's operative petition—control our decision in this proceeding.").

The focus on the motion for leave in these cases flows directly from the statutory language that requires the defendant to file a motion for leave and refers to the allegations in that motion as a "pleading" or something the defendant "plead." TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(g)(1).

10

Is the analysis different under section 33.004(j) for an unknown responsible third party who commits a criminal act that causes the plaintiff's loss? To be sure, Windstar's ability to designate an unknown responsible third party stands or falls on section 33.004(j)—it is the exclusive means to designate a John Doe. *See In re Gonzales*, 619 S.W.3d 259, 262 (Tex. 2021). And section 33.004(j) contains stricter pleading requirements, mandating that at least some of the information be included in the defendant's answer. For an unknown responsible third party, section 33.004(j) has four pertinent requirements, the first in its preamble and the next three in its numbered subparts:

> Notwithstanding any other provision of this section, if, . . . the defendant alleges in an *answer* filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:
>
> (1) the court determines that the defendant has *pleaded* facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;
>
> (2) the defendant has stated in the *answer* all identifying characteristics of the unknown person, known at the time of the answer; and
>
> (3) *the allegation* satisfies the *pleading* requirements of the Texas Rules of Civil Procedure.

*Id*. § 33.004(j) (emphasis supplied).

Plaintiffs urge that all the asserted allegations, including the pleaded facts, must be in the answer. Windstar counters that section 33.004(j) only requires that two things need be in the answer—an allegation that an unknown person committed a criminal act that was a cause of the loss, and all the identifying characteristics of that unknown person. Windstar's construction of the provision urges that the pleaded facts supporting that the unknown person committed a criminal act can appear in the motion for leave. We agree with Windstar.

The question turns on construction of section 33.004. Statutory construction is a legal

11

question that we review de novo.  *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).  Our primary focus in statutory interpretation is to give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternate constructions.  *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000); TEX.GOV'T CODE ANN. § 311.023(1), (5).  We seek that intent "first and foremost" in the statutory text.  *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006).  We consider the words in context, and not in isolation.  *In re Office of the Att'y. Gen. of Texas*, 456 S.W.3d 153, 155 (Tex. 2015) (per curiam) ("Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases.").  We must presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose.  *Emeritus Corp. v. Blanco*, 355 S.W.3d 270, 276 (Tex.App.--El Paso 2011, pet. denied).  These principles support Windstar's construction.

At the outset, there is no doubt the procedure for designating known and unknown persons as responsible third parties is different.  There is a timing difference in that an unknown person must be designated within 60 days of the answer, while a known person might be designated just outside of 60 days from trial.  *Cf.* § 33.004(a) and (j); *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 61 (Tex.App.--Houston [1st Dist.] 2005, orig. proceeding) (time deadlines for unknown responsible third parties is dictated solely by subsection (j)).  And for unknown persons, certain allegations must be in the answer.  *Sheffield v. Begeman*, 274 S.W.3d 846, 850 (Tex.App.-- Eastland 2008, pet. denied) ("If the third party's identity is unknown, Section 33.004(j) unambiguously requires the defendant to also timely include a specific allegation in its *answer*. The legislature clearly distinguished between known and unknown potential third parties and

12

between motions and answers.") (emphasis supplied). The statute expressly requires the answer to state "that an unknown person committed a criminal act that was a cause of the loss or injury" and "all identifying characteristics of the unknown person, known at the time of the answer[.]" TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(j)(2). The sole question here is whether section 33.004(j)(1) and (3)'s requirement that "the defendant has *pleaded facts* sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal" must also only be in the answer.

We conclude that the Petersons' construction focuses on the words of the statute in isolation and outside the context of how they are used elsewhere in the section. The Petersons' construction of section 33.004 would assign the term "pleaded facts" one meaning in subdivision (g) and a different meaning in subdivision (j). That is, "pleaded facts" are those in the motion for leave under 33.004(g), but the term would mean something different for section 33.004(j). The Petersons offer no rationale for why the legislature would have the same term mean two different things in the same statute. And if the legislature intended otherwise, it could have used the word "answer" consistently through 33.004(j), rather than using it in the preamble and subsection (2), but avoiding its use in subsection (j)(1) and (j)(3). Based on the selective inclusion of the word "answer" in section 33.004(j), and the specific inclusion of the phrase "pleaded facts" in section 33.004(j)(1), the legislature's use of the terms "plead" and "pleadings" in the rest of section 33.004 should inform us to how that term is intended in subsection (j).[7] Because the term "pleaded facts"

---

[7] The Petersons note that TEX.R.CIV.P. 45 defines a pleading to include the petition and answer. And this Court has concluded that some pleadings cannot serve as a proxy for an answer. *Bluebonnet Fin. Assets v. Miller*, 324 S.W.3d 603, 611 (Tex.App.--El Paso 2010, no pet.) (post trial brief, written objection to evidence and motion for new trial could not constitute an answer in a suit on a sworn account). Yet in the context of section 33.004, the legislature has used the term plead and pleading to include the motion for leave, and "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX.GOV'T CODE ANN. § 311.011(b).

elsewhere includes those set out in the motion for leave, it should have the same meaning in section 33.004(j)(1) and (3).

The obvious purpose of the factual pleading requirement is to provide the trial court with sufficient information to determine whether there is a "reasonable probability that the acts of the unknown person were illegal." *Id*. § 33.004(j)(1). In effect, the legislature has mandated a judicial screening process to weed out facially implausible claims. But whether those pleaded facts appear in the motion for leave or the answer would be of no moment to the trial court in conducting that review. And if the pleaded facts are set out in the motion for leave, requiring them to also appear in the answer would be, as Windstar argues, "a pointless exercise in busy work." That is not to say that the information specifically required to be in the answer can be alleged only in the motion for leave—we take and enforce statutes as we find them. But when construing a statute, we consider its purpose, which here is fulfilled when the pleaded facts appear in the motion for leave. *See* TEX.GOV'T CODE ANN. § 311.023(1) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . object sought to be attained).

### *3. The answer and motion for leave provide fair notice*

Texas follows a "fair notice" standard for pleadings in civil cases—a party meets that standard when the opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence which might be relevant to the controversy. *See Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). "The procedural rules and the case law interpreting them require that pleadings give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved." *City of Socorro v. Campos*, 510 S.W.3d 121, 129 (Tex.App.--El Paso 2016, pet. denied). The same pleading standard applies to parties filing a motion for leave to designate a

14

responsible third party.  *See In re Cordish Co.*, 617 S.W.3d at 913-14 ("[A] responsible third party may be designated by notice pleading[.]").

Windstar's motion for leave easily meets this standard.  It sets out the background of the accident (date and place) and states that an unknown driver of a white pickup truck was "immediately in front of" the Windstar truck, and "made a sudden stop, without any warning, and then attempted to make an illegal left turn from the number one lane, instead of the inner designated turning lane."  The motion for leave alleges that Windstar's driver was then "force[d] to perform an evasive maneuver to the right, resulting in an accident" with the Debrule vehicle. The motion for leave cites the applicable traffic regulation.  We agree with Windstar that it put the Petersons and Debrule on fair notice of the allegation asserted.  *In re YRC Inc.*, 646 S.W.3d at 809-10 ("So long as a party can ascertain from the pleading the nature, basic issues, and type of evidence that might be relevant to the controversy, a pleading satisfies the Rule 47(a) standard.").

### 4. *Is violation of section 545.101(b) a criminal offense?*

Section 33.004(j) limits unknown responsible third parties to those who commit "criminal act[s]."  TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(j).  In its motion for leave, and second supplemental answer, Windstar contends the driver of the white pickup violated Texas Transportation Code section 545.101(b), which states:

> (b) To make a left turn at an intersection, an operator shall:
>
>   (1) approach the intersection in the extreme left-hand lane lawfully available to a vehicle moving in the direction of the vehicle; and
>
>   (2) after entering the intersection, turn left, leaving the intersection so as to arrive in a lane lawfully available to traffic moving in the direction of the vehicle on the roadway being entered.

TEX.TRANSP.CODE ANN. § 545.101(b).  The Petersons argued below that the violation of this statute is not a criminal offense for the purposes of section 33.004(j).

15

The rules governing driving are found in the "Rules of the Road" found in subtitle C of the Transportation Code. Section 542.301 states that "[a] person commits an *offense* if the person performs an act prohibited or fails to perform an act required by this subtitle. . . . Except as otherwise provided, an *offense* under this subtitle is a misdemeanor." TEX.TRANSP.CODE ANN. § 542.301 (emphasis supplied). Because the left turn violation that Windstar focuses on in section 545.101(b) falls within subtitle C, section 542.301(a) and (b) apply to it, and the violation would be a misdemeanor "offense." "A person *convicted* of an *offense* that is a misdemeanor under this subtitle for which another penalty is not provided shall be punished by a fine of not less than $1 or more than $200." *Id*. § 542.401 (emphasis supplied).

Is an offense under section 545.101 a crime? Because "criminal acts" is not a defined term in the statute, we look to its commonly understood meaning. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) ("When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning."). "To determine its *common, ordinary* meaning, we look to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Id.* (emphasis original). Considering these sources, we conclude that violation of the Rules of Road is a criminal act.

Violation of section 545.101 is certainly a crime for Fourth Amendment purposes. The Fourth Amendment prohibits the police from seizing a person through a traffic stop unless the police officer has "a particularized and objective basis for suspecting the particular person stopped of *criminal* activity[.]" *Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020), *quoting United States v. Cortez*, 449 U.S. 411, 417-18 (1981) (emphasis supplied). And this Court has likewise

16

consistently held that an officer may conduct a traffic stop of a motorist if the officer has reasonable suspicion that the motorist has committed a traffic *offense* in his view—and those offenses are often no more than the rules of the road found in subchapter C. *See, e.g.*, *Reyes v. State*, 603 S.W.3d 543, 549-50 (Tex.App.--El Paso 2020, no pet.) (stop justified where officer witnessed driver failing to maintain a single lane of travel); *Amancio v. State*, No. 08-19-00166-CR, 2021 WL 1921050, at *4 (Tex.App.--El Paso May 12, 2021, pet. ref'd) (not designated for publication) (same for failing to stop at a stop sign); *Banegas v. State*, No. 08-17-00224-CR, 2019 WL 6271270, at *7 (Tex.App.--El Paso Nov. 25, 2019, pet. ref'd) (not designated for publication) (same for operating a motor vehicle with an obscured license plate); *Al-Hanna v. State*, No. 08-17-00037-CR, 2019 WL 156779, at *3 (Tex.App.--El Paso Jan. 10, 2019, no pet.) (not designated for publication) (same for driving at a speed greater than was reasonable and prudent under the circumstances); *Pena v. State*, No. 08-16-00028-CR, 2018 WL 3569367, at *3 (Tex.App.--El Paso July 25, 2018, no pet.) (not designated for publication) (same for (1) operating a motor vehicle without its rear license plate illuminated; (2) making an unsafe lane change; and (3) failing to signal before making a turn from a lane of travel). All of which begs the question for how a subchapter C traffic offense can be termed "criminal" under the Fourth Amendment, but somehow become only a civil matter for Chapter 33?

While some offenses are less serious than others, they are still crimes. The United States Supreme Court made that point in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). In that case, the petitioner, argued that the Fourth Amendment prohibited her arrest for a violating a minor traffic offense under the Texas Traffic Code—failing to use a seatbelt as required by section 545.413. *Id.* at 323-34. The Court had no pause in treating the offense as a crime, stating that the officer "had probable cause to believe that [the driver] had committed a crime in [the officer's]

17

presence." Thus, the Court characterized a violation of that provision of the Transportation Code to be a crime, even though the Court acknowledged that it was "a very minor criminal offense." *Id*. at 354.

Moreover, the *Atwater* court rejected the essence of the argument asserted here— that misdemeanor offenses can be somehow categorized as serious and not serious, such that an arrest is allowed for some, but not for others. The Court undertook a historical analysis that undercut the claim that warrantless arrests had historically been limited to more serious crimes involving a breach of the peace. *Id*. at 340 ("We simply cannot conclude that the Fourth Amendment, as originally understood, forbade peace officers to arrest without a warrant for misdemeanors not amounting to or involving breach of the peace."). The Court also rejected a rule that would distinguish between "jailable" and "fine-only" misdemeanors to determine whether an officer could execute a warrantless arrest. *Id*. at 348-350. The Court reasoned that kind of line drawing would offer "very little in the way of administrability," and would only increase litigation to distinguish between serious and less serious misdemeanors. *Id.* at 350. We could say the same here, as the Petersons' argument portends eventual litigation over which of the "Rules of the Road" qualify as a criminal offense under section 33.004, and which do not.

While it is true that some parts of subtitle C carry greater penalties and that some conduct is treated differently than others, the conduct prescribed is still defined as a crime. For instance, section 543.004 requires an officer to issue a notice to appear for speeding, using a cell phone while driving, and for open container violations, leaving perhaps the option of a warning ticket for other offenses. But any person "convicted of an offense that is a misdemeanor under this subtitle for which another penalty is not provided shall be punished by a fine of not less than $1 or mor than $200." TEX. TRANSP. CODE ANN. § 542.401. And Chapter 543 also allows for the arrest of

18

violators of provisions within subtitle C. *Id.* §543.001 (any peace officer may arrest without a warrant a person found violating this subtitle); § 543.002(a)(2) (an arrested person who refuses to make a written promise to appear in court must be taken before a magistrate).

Common dictionary definitions also support a broad meaning for the term criminal act. Black's Law Dictionary defines "criminal act" as an "unlawful act that subjects the actor to prosecution under the criminal law." *Criminal Act*, BLACK'S LAW DICTIONARY (10th ed. 2014). In turn, "criminal" is defined as "of relating to, or involving a crime." *Criminal*, BLACK'S LAW DICTIONARY (10th ed. 2014). A "crime" is "An act that the law makes punishable; the breach of a legal duty treated as the subject matter of a criminal proceeding." *Crime*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Crime*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY, 2003 476 ("An action or an instance of negligence that is deemed injurious to the public welfare or morals of the interests of the state and that is legally prohibited."). The designation "misdemeanor" does not remove an act from the realm of criminal conduct. *Misdemeanor*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A crime that is less serious than a felony and is usually punishable by fine, penalty, forfeiture, or confinement (usually for a brief term) in a place other than prison (such as a county jail)").

Other Texas statutes use the phrase "criminal act" and when the legislature desires, it limits the phrase with refining clauses or modifiers. *See, e.g.*, TEX.CODE CRIM.PROC.ANN. art. 37.071 § 2(b)(1) (allowing jury to consider prior "criminal acts *of violence*" in death penalty case); *Id.* art. 37.072 § 2 (b)(1) ( allowing jury to consider prior "criminal acts *of violence*" in repeat sex offender in capital case); TEX.LAB CODE ANN. § 404.1015 (allowing public counsel to refuse to provide services to claimant who commits or threatens to commit "criminal act *in pursuit of a workers' compensation claim*") (emphasis supplied); TEX.FIN.CODE ANN. § 122.258 (authorizing

19

removal of credit union officials who have or are about to commit "a fraudulent or criminal act *involving the conduct of the business of the credit union*") (emphasis supplied); TEX.CIV.PRAC.& REM.CODE ANN. § 125.002(h) (authorizing abatement suits based on several factors, including "the occurrence of criminal acts *on the property*") (emphasis supplied); TEX.OCC.CODE ANN. § 301.161(d) ("The board may establish a criminal investigations unit to investigate suspected criminal acts *relating to the practice of nursing as authorized by this chapter*.") (emphasis supplied).

In fact, the legislature included a limiting term for criminal acts in section 33.004(j). It limited those acts to those "that was a cause of the loss or injury that is the subject of the lawsuit[.]" TEX.CIV.PRAC.& REM.CODE ANN. § 33.004(j). Had the legislature desired to use other limiting factors—such as limiting crimes to felonies, or crimes of violence, or crimes punishable by state prison — then it could have done so. Because it did not do so, we decline to add some similar feature by judicial fiat.

### B. No Adequate Remedy at Law

Finally, Windstar must show that it lacks an adequate remedy at law for the denial of its motion for leave. That question has already been resolved in its favor by the Texas Supreme Court (along with this Court) and is not challenged by the Petersons. *See In re Mobile Mini, Inc.*, 596 S.W.3d at 787-88; *In re Coppola*, 535 S.W.3d at 507-09; *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 409 (Tex.App.--El Paso 2010, orig. proceeding).

## V. CONCLUSION

As our dissenting colleague points out, the questions raised here are not without counterarguments. But the issues raised are legal questions which we are required to review de novo, and based on that review, we conclude the trial court erred in its construction of section

20

33.004(j). The trial court is hereby ordered to vacate its order setting aside its denial of Windstar's designation of John Doe as a responsible third party and to grant leave for that designation. The writ of mandamus will issue only if the trial court fails to comply. *See* TEX.R.APP.P. 52.8(c).

JEFF ALLEY, Justice

August 26, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.
Rodriguez, C.J., dissenting