

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00371-CV

**CITY OF SAN ANTONIO AND TOYOTA MOTOR MANUFACTURING TEXAS, INC.**
Appellants

v.

**SOUTHSIDE AFFORDABLE DEVELOPMENT, LLC**
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CI2553
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:        Lori I. Valenzuela, Justice
               H. Todd McCray, Justice
               Velia J. Meza, Justice

Delivered and Filed: July 16, 2025

REVERSED AND RENDERED

The City of San Antonio ("COSA") appeals the trial court's interlocutory order denying its plea to the jurisdiction. Because the trial court lacks subject-matter jurisdiction over Southside Affordable Development, LLC's ("Southside") claims, we reverse and render judgment dismissing Southside's lawsuit with prejudice.

## BACKGROUND

In 2003, COSA and 16 other parties, including the State of Texas, entered into the Project Starbright Agreement ("the Agreement") with Toyota Motor Manufacturing North America, Inc. ("Toyota"), to bring a Toyota manufacturing plant to land COSA had annexed in 2002.[1] Under paragraph 2.3 of the Agreement, COSA and other local entities also agreed to the terms and obligations of a separate agreement with Toyota, (the "City Agreement").[2] Under Paragraph 24(a) of the City Agreement ("Paragraph 24(a)"), COSA agreed to work in good faith with Toyota in establishing zoning regulations to Toyota's satisfaction within a three mile perimeter of the Toyota manufacturing plant (the "Enhanced Zoning Area").

> The City agrees to initiate appropriate zoning cases and revisions to its Unified Development Code to zone the larger geographical area surrounding the Project Site located within the City's zoning jurisdiction and within three (3) miles of the perimeter of the Project Site (the "Enhanced Zoning Area") The City agrees to commence such zoning process as soon as is practicable after the Effective Date and to work with Toyota in accordance with procedures required and authorized by law to zone the area which will include the creation of an appropriate new zoning overlay district (a "Target Industrial Development Area") with the objective of imposing upon the Enhanced Zoning Area appropriate land use guidelines that satisfy Toyota regarding use, density, set-back and other restrictions consistent with Project Starbright. Toyota may designate a representative to work with the City, and the City will work in good faith with such representative, in the development of land use planning initiatives in the Enhanced Zoning Area and the Target Industrial Development Area, as well as any other land use planning initiative that affects the general area of the Project Site.

---

[1] The other parties to the Agreement were Bexar County, Texas; City of San Antonio, Texas, Starbright Industrial Development Corporation; Texas Department of Transportation; Texas Workforce Commission; Alamo Workforce Development, Inc.; Texas Department of Economic Development; Texas Commission on Environmental Quality; Texas Comptroller of Public Accounts; San Antonio Water System; (San Antonio) City Public Service; San Antonio Economic Development Foundation; Greater Kelly Development Authority; Southwest (San Antonio) Independent School District; Bexar Metropolitan Water District; and Bexar County Rail District.

[2] The other parties to the City Agreement were San Antonio Water System; (San Antonio) City Public Service; City of San Antonio, Texas, Starbright Industrial Development Corporation; San Antonio Economic Development Foundation; Alamo Workforce Development, Inc.; Greater Kelly Development Authority; and Bexar Metropolitan Water District.

On May 22, 2003, COSA's City Council ("City Council") passed Ordinance 97650, approving the Agreement and authorizing the City Manager to execute it on COSA's behalf. Terry Brechtel, then city manager of COSA, and then Mayor Ed Garza, executed the Agreement on behalf of COSA on June 26, 2003.

On September 5, 2002, months prior to the execution of these agreements, COSA approved Ordinance 96557, which added 8,358 acres to COSA. The Enhanced Zoning Area, as defined in Paragraph 24(a), is located within this tract. Southside currently owns approximately 97 acres of property within the Enhanced Zoning Area (the "97-Acre Tract").

Initially, COSA zoned the entire 8,358 acre tract as DR (Development Reserve). But Presto Tierra LLC, the prior owner of the 97-Acre Tract, requested a zoning change for some of this tract, including the 97-Acre Tract. On January 15, 2004, about seven months after the adoption of the Agreement, COSA approved the rezoning request via Ordinance 98711, which changed the zoning classification of the 97-Acre Tract from DR to M1-1 (mixed light industrial use). Under this classification, multifamily residential use is not permitted.

On January 23, 2017, Presto Tierra LLC submitted another rezoning application, requesting that COSA change the zoning of the 97-Acre Tract from M1-1 to C-2 AHOD (commercial). The application presented the following reason for seeking the change:

> The reason for this zoning request is to give the "Preserve" development zoning categories that are more in keeping with the rest of mixed-use projects in San Antonio. The current zoning categories are left over from the City South Management Authority, which entity has been dissolved. This project has always been a mixed-use development of commercial along Hwy. 16 . . . For the 100 acres fronting Hwy. 16. we are requesting C-2 . . . . The C-2 portion is not compatible with the current land use in the Heritage South Sector Plan . . . .

On April 20, 2017, COSA approved Ordinance 2017-04-20-0279 which changed the zoning classification of the 97-Acre Tract to C-2 as requested.

Presto Tierra LLC conveyed the 97-Acre Tract to Southside two months later, on June 29, 2017.[3]

In February of 2022, Southside requested rezoning of approximately 34.5 acres of the 97-Acre Tract from C-2 to R-5 (Residential Single-Family). City staff recommended denying the request, but the zoning commission recommended approving the application on April 5, 2022. The zoning request was then placed on the City Council's agenda for August 4, 2022. Before the City Council's scheduled vote on the application, however, Southside obtained formal postponement of its case. The matter was reset on the City Council's agenda for December 15, 2022, but Southside again postponed the vote, noting that the requested zoning change to R-5 might not suit the proposed development. Southside then amended its application in May of 2023, to request the 34.5 acres be rezoned to MF-33 (multi-family residential).

Southside represents that, in June 2023, the councilwoman for the district containing the 97-Acre Tract, Dr. Adriana Rocha Garcia, advised Southside she was not supportive of the zoning change. On September 1, 2023, representatives of Southside met with the City Attorney, members of his staff, Dr. Garcia, an Assistant City Manager, and the Director of the Neighborhood & Housing Services Department. On October 6, 2023, the City Attorney's office advised Southside by email that COSA would not support the project. Southside has since postponed a vote by the City Council on its requested zoning change.

On December 4, 2023, Southside filed a lawsuit asserting Ordinance 97650 violated the Texas Constitution by improperly delegating COSA's zoning authority to Toyota, and that Ordinances 98711 (changing the zoning classification from DR to M1-1 (mixed light industrial

---

[3] On June 29, 2017, the 97-Acre Tract was conveyed from Presto Tierra LLC to FLG Preserve, LLC. On June 20, 2023, FLG Preserve, LLC filed a certificate of amendment with the Texas Secretary of State changing its name to Southside Affordable Development.

use)) and 2017-04-20-0279 (changing the zoning classification from M1-1 to C-2 AHOD (commercial)), violate the Texas Constitution by effectuating zoning changes to Toyota's satisfaction by prohibiting multifamily residential use. Southside also asserts Ordinance 97650 is an illegal taking in violation of the Private Real Property Rights Protection Act ("PRPRPA"), and that Ordinance 97650 is also void because COSA failed to conduct a takings impact assessment as required by the PRPRPA.[4]

COSA filed a plea to the jurisdiction and motion to dismiss for lack of subject-matter jurisdiction, asserting COSA is immune from Southside's lawsuit, that Southside's claims are not ripe for review, and that Southside lacks standing. After hearing argument from the parties, the trial court denied COSA's plea to the jurisdiction on May 8, 2024. COSA then filed this interlocutory appeal.

## STANDARD OF REVIEW

"We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review." *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). "A defendant may challenge a plaintiff's standing by filing a plea to the jurisdiction." *Beasley*, Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley, 598 S.W.3d 237, 241 (Tex. 2020). "Standing is a threshold requirement to maintaining a lawsuit." *Id*., at 240. "In applying a de novo standard of review to a standing determination, reviewing courts construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *Id*.

"At the plea to the jurisdiction stage, governmental officials may challenge jurisdiction based solely on the pleadings or may challenge jurisdictional facts." *Jones v. Turner*, 646 S.W.3d

---

[4] Southside's live petition is its Second Amended Petition, dated January 26, 2024.

319, 325 (Tex. 2022). "When the pleadings are challenged, we review whether the alleged facts, if true, affirmatively demonstrate jurisdiction; because we construe pleadings liberally in favor of the pleader, we will grant a plea to the jurisdiction without an opportunity to replead only if the pleadings affirmatively negate jurisdiction." *Id*. "When jurisdictional facts are challenged, we consider relevant evidence in the record and will grant the plea only if there is no question of fact as to the jurisdictional issue." *Id*.

"Constitutional standing is a prerequisite for subject matter jurisdiction." *Tex. Bd. of Chiropractic Examiners v. Tex. Med. Ass'n*, 616 S.W.3d 558, 566 (Tex. 2021). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015). It "requires a concrete injury that is both traceable to the defendant's conduct and redressable by court order." *Tex. Bd. of Chiropractic Examiners*, 616 S.W.3d at 567. An appellate court reviews questions of standing de novo. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "Without standing, a court lacks subject matter jurisdiction to hear the case." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). Because standing is a necessary component of subject-matter jurisdiction, it cannot be presumed or waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44, 445–46 (Tex. 1993).

**ANALYSIS**

COSA asserts the trial court lacks subject-matter jurisdiction over Southside's claim. Because we agree with COSA that Southside lacks standing for the claims it has asserted, we reverse the trial court's denial of COSA's plea to the jurisdiction.

*Applicable Law on Standing*

"Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case."

> The Texas standing doctrine derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a person for an injury done him.

*In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (cleaned up). "The Texas standing requirements parallel the federal test for Article III standing, which provides that a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 799 (Tex. 2021). "The Texas injury-in-fact analysis similarly requires that the plaintiff suffer "personal" injury." *In re Abbott*, 601 S.W.3d at 808. "A person has standing to sue when he or she is personally aggrieved by an alleged wrongdoing." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005).

"Generally, a cause of action for injury to real property accrues when the injury is committed." *Ceramic Tile Intern., Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.) (citing *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984)). Thus "[t]he right to sue for an injury to real property is a personal right belonging to the person owning the property at the time of the injury." *Electro Sales & Servs., Inc. v. City of Terrell Hills*, No. 04-17-00077-CV, 2018 WL 1309709, at *3 (Tex. App.—San Antonio Mar. 14, 2018, pet. denied) (cleaned up). "Therefore, without express provision, the right does not pass to a subsequent purchaser of the property." *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 27 (Tex. App.—Tyler 2002, pet. denied). Consequently, "[a] subsequent purchaser cannot recover for an injury committed before his purchase absent an express provision in the deed, or . . . an assignment, granting him that

power." *Balusek*, 137 S.W.3d at 724. "To recover on an assigned cause of action, the party claiming the assigned right must prove a cause of action existed that was capable of assignment and the cause was in fact assigned to the party seeking recovery." *Id.*

### Southside has no standing for its Constitutional Challenges

In the first two counts of its live petition, Southside challenges the constitutionality of Ordinances 97650 (approving the Agreement), 98711 (changing the zoning to M1-1) and 2017-04-20-0279 (changing the zoning to C-2 AHOD) (together the "Ordinances").

In Count 1, Southside seeks a judicial declaration that the Ordinances violate Article XI, Section 13 of the Texas Constitution, which permits the legislature to define the proprietary functions of a municipality. TEX. CONST., ART. 9, § 13. Southside asserts that through Ordinance 97650 COSA has improperly delegated its zoning authority to Toyota in what amounts to contract zoning.[5] Southside asserts that through Ordinance 97650, COSA abdicated its zoning authority in the Enhanced Zoning Area and that, through Ordinances 98711 and 2017-04-20-0279, COSA has conformed to Toyota's wishes and prevented multifamily development on the 97-Acre Tract.

In Count 2, Southside seeks a judicial declaration that the Ordinances violate Article 1, Section 19 of the Texas Constitution, which protects its citizens from the deprivation of "life, liberty, property, privileges or immunities . . . except by the due course of the law of the land." TEX. CONST., ART. 1, § 19. Southside asserts that, because the Ordinances prevent multifamily development on the 97-Acre Tract, Southside has been deprived of the ability to dispose of its property as it wishes—i.e., to sell its property to a purchaser who wishes to build multifamily housing—without due process.

---

[5] *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 772 n.2 (Tex. 2006) ("'Contract zoning' occurs when a governmental entity, such as a city, enters into a binding contract in which it promises to zone land in a certain way in exchange for a landowner's promise to use the land in a particular manner. Courts have held that contract zoning is invalid because, by entering into such agreements, the city impermissibly abdicates its authority to determine proper land use, effectively bypassing the entire legislative process.") (citations omitted).

<u>Southside has not asserted a facial challenge</u>.

First, we note that Southside has plead an "as applied" challenge to the Ordinances rather than a facial challenge. "For a statute to facially violate a constitutional provision, the statute must by its terms always and in every instance operate unconstitutionally." *Barshop v. Medina Cnty. Underground Water Conserv. Dist.*, 925 S.W.2d 618, 623 (Tex. 1996).[6] Accordingly, it is not enough for the challenger to show that a statute operates unconstitutionally under some or even most circumstances. *In re C.R.P.*, No. 04-22-00406-CV, 2022 WL 17971308, at *2 (Tex. App.— San Antonio Dec. 28, 2022, pet. denied) (mem. op.). It is the challenger's burden to prove the statute always operates unconstitutionally in all possible circumstances. *See State v. Flores*, 679 S.W.3d 232, 247–48 (Tex. App.—San Antonio 2023, pet. ref'd).

In the present case, Southside has not explained how the Ordinances will always operate in a manner that is unconstitutional. Southside has challenged the constitutionality of Ordinance 97650's adoption of Paragraph 24(a), and the subsequent effectuation of Paragraph 24(a) through Ordinances 98711 and 2017-04-20-0279. However, these latter ordinances did not affect all of the properties within Enhanced Zoning Area—and, ultimately, Southside only argues how the Ordinances have affected ***its*** property rights.

Southside has not alleged—nor can it—that Toyota's purported veto power prevented Presto Tierra LLC, the prior owner of the 97-Acre Tract, from obtaining ***two*** zoning changes via Ordinances 98711 and 2017-04-20-027, and then selling the 97-Acre Tract to an interested party

---

[6] By contrast, "[i]n an 'as applied' challenge, the appellant is only required to demonstrate the statute operates unconstitutionally when applied to the appellant's particular circumstances." *In re A.M.*, 312 S.W.3d 76, 86 (Tex. App.—San Antonio 2010, pet. denied) (citations omitted).

(Southside). Because the only harm alleged in the first two counts of Southside's petition is to Southside alone, we find Southside has brought an "as applied" challenge to the Ordinances.[7]

Southside lacks standing because it has not been injured.

"To show constitutional standing, a plaintiff must demonstrate that: (1) it suffered a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable decision is likely to redress the injury." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 912–13 (Tex. 2023).

But the jurisdictional facts of this matter show that all three of the Ordinances were enacted prior to the date Southside acquired the 97-Acre Tract. Accordingly, without a new injury occurring ***after*** Southside purchased the property, or an assignment of a cause of action for a prior injury, Southside cannot demonstrate it has been aggrieved, and therefore has no standing. *See Electro Sales*, 2018 WL 1309709, at *3 ("A mere subsequent purchaser cannot recover for an injury committed before his or her purchase.") (quoting *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 732 (Tex. App.–Texarkana 2003, no pet.).[8] Southside has not identified any such assignment and there is no language in the general warranty deed conveying the 97-Acre Tract that would indicate a right to sue has been assigned to Southside.

---

[7] We note that it is unlikely Southside can raise a facial challenge because the language in Paragraph 24(a) does not clearly establish that Toyota has a right to veto zoning requests inside the Enhanced Zoning Area, and we are directed to interpret a governmental contract as lawful, if possible. *See Borgelt v. Austin Firefighters Ass'n, IAFF Loc. 975*, 692 S.W.3d 288, 294 (Tex. 2024) ("Under ordinary contract-interpretation principles, which the doctrine of constitutional avoidance magnifies because this is a governmental contract, we must read the agreement to authorize only lawful conduct."). However, we cannot take Southside's assertions and read those into an agreement that does not expressly grant such authority to Toyota. That does not mean we must ignore plain language that does improperly delegate municipal authority to another entity. *See City of Dallas v. Employees' Ret. Fund of City of Dallas*, 687 S.W.3d 55 (Tex. 2024) (rejecting city ordinance that gave a third party the right to veto categories of future lawmaking and holding "that such an alienation of lawmaking authority is impermissible").

[8] Further, it is doubtful that the prior owner of the 97-Acre Tract, Presto Tierra LLC, suffered injuries it could have assigned to Southside, given the jurisdictional evidence shows that Ordinances 98711 and 2017-04-20-027 are both products of approved rezoning requests made by Presto Tierra LLC.

However, in Counts 1 and 2, Southside claims a new injury has occurred—alleging COSA has denied its zoning request, purportedly as a result of COSA's alleged, improper agreement with Toyota.

> Based on the Zoning Agreement, **COSA denied Southside's request to rezone its Property** to permit multifamily residential use [and that, in] short, **COSA and Toyota engaged in unconstitutional contract zoning to Southside's detriment**.
> . . . .
> COSA's adoption of Paragraph 24(a) of the City Agreement in Ordinance 97650; its subsequent zoning of the Property to prohibit residential use (to Toyota's satisfaction); and **COSA's refusal to rezone Southside's property** to allow residential use **deprives Southside of its right** to use, enjoy, and dispose of its Property as guaranteed by Section 19. COSA's **deprivation of Southside's rights** was not by "due course of law." of its use and enjoyment of its property without due course of law.[9]

But the jurisdictional evidence shows COSA has not yet denied Southside rezoning requests, as Southside has repeatedly delayed or cancelled pending votes on those requests. While Southside asserts Councilwoman Garza and the City Attorney's Office have indicated they will not support Southside's rezoning effort, their statements are not substitutes for an official act of COSA. *See*, *e.g.*, *City of Denton v. Grim*, 694 S.W.3d 210, 215–16 (Tex. 2024) ("[T]he actions of a lone council member are generally not the actions of the city itself.").

Accordingly, we conclude Southside does not have standing for its constitutional challenges to the Ordinances because: 1) it did not purchase the 97-Acre Tract until after the Ordinances were past; 2) there is no assertion or jurisdictional evidence that Presto Tierra LLC assigned a right to sue to Southside; and 3) Southside has suffered no new injury since it has owned the 97-Acre Tract.

---

[9] Emphasis added.

***Southside has no standing for its claims under the PRPRPA***.

For similar reasons, we also conclude Southside does not have standing to assert claims under the PRPRPA.

"The Texas legislature enacted PRPRPA in June 1995, creating a statutory takings claim for a property owner whose property value is diminished by at least twenty-five percent as a result of certain governmental actions or whose property is affected in a manner that requires compensation under the U.S. Constitution or Section 17 or 19, Article I, of the Texas Constitution." *Younger v. El Paso Cnty. Emergency Services Dist. No. 2*, 564 S.W.3d 97, 102–03 (Tex. App.— El Paso 2018, no pet.) (citing TEX. GOV'T CODE § 2007.002(5)).

In Count 3, Southside asserts COSA engaged in "governmental actions" including the adoption of Ordinance 97650—which granted Toyota veto authority of zoning in the Enhanced Zoning Area under Paragraph 24(a)—and "de facto denial of Southside's request to rezone the [97-Acre Tract]." Southside claims COSA's refusal to permit multifamily development on the 97-Acre Tract, at Toyota's behest, COSA's actions constitute a "taking" as defined by PRPRPA, as COSA's actions restrict and limit Southside's use of the property and cause of a reduction of over 25% in the market value of the 97-Acre Tract as it cannot be sold for multifamily residential development. In Count 4, Southside asserts that, because COSA's actions amount to a taking, COSA was required to prepare a "takings impact assessment" under Texas Government Code section 2007.043(a), and that its failure to do so should render Ordinance 97650 (and the City Agreement) invalid.

The PRPRPA unquestionably vests district courts with subject-matter jurisdiction to hear claims brought under the statute. *See* TEX. GOV'T CODE § 2007.021 (a) ("A private real property owner may bring suit under this subchapter to determine whether the governmental action of a

political subdivision results in a taking under this chapter. A suit under this subchapter must be filed in a district court in the county in which the private real property owner's affected property is located[,]"). However, the "PRPRPA limits the categories of persons who may bring suit under the statute." *City of Houston v. Guthrie*, 332 S.W.3d 578, 587–88 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

"When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis. *In re S.M.D.*, 329 S.W.3d 8, 12–13 (Tex. App.—San Antonio 2010, pet. dism'd). To have standing to bring a claim under PRPRPA, plaintiffs must be "owners" who allege a "taking"—defined as either (1) a governmental taking under the United States Constitution or the Texas Constitution or (2) a governmental action reducing the market value of property by at least 25 percent. *Id.* § 2007.002(5). "Owner" is defined as "a person with legal or equitable title to affected private real property **at the time a taking occurs."** *Id.* § 2007.002(2) (emphasis added).

In the present case, we find that Southside does not have standing for this claim because Presto Tierra LLC owned the 97-Acre Tract at the time that Ordinance 97650 was enacted. Because Southside did not own the property at the time of that 'government action' (that Southside claims amounts to a taking), Southside does not qualify as an "owner"—and therefore lacks standing—under the PRPRPA to challenge that ordinance.

Additionally, the PRPRPA is only applicable to the following governmental actions:

(1) the adoption or issuance of an ordinance, rule, regulatory requirement, resolution, policy, guideline, or similar measure;

(2) an action that imposes a physical invasion or requires a dedication or exaction of private real property;

(3) an action by a municipality that has effect in the extraterritorial jurisdiction of the municipality, excluding annexation, and that enacts or enforces an ordinance, rule,

regulation, or plan that does not impose identical requirements or restrictions in the entire extraterritorial jurisdiction of the municipality; and

(4) enforcement of a governmental action listed in Subdivisions (1) through (3), whether the enforcement of the governmental action is accomplished through the use of permitting, citations, orders, judicial or quasi-judicial proceedings, or other similar means.

TEX. GOV'T CODE § 2007.003 (a). Southside's assertion of a "de facto denial" of its request does not fall under any of the above categories of government action.

As discussed earlier, statements from COSA representatives are not substitutes for an official act of COSA. *See City of Denton v. Grim*, 694 S.W.3d 210, 215–16 (Tex. 2024). Thus, there has been no official government action that amounts to a taking since Southside purchased the 97-Acre Tract. Accordingly, Southside also lacks standing to assert its claim that COSA failed to prepare a "takings impact assessment" as required under § 2007.043(a). Thus, we conclude that Southside does not have standing to assert either of its PRPRPA claims.[10]

This does not mean that we endorse the conduct alleged by Southside (*i.e.*, that COSA has improperly delegated its zoning authority within the Enhanced Zoning Area to Toyota). However, because Southside did not own the 97-Acre Tract until after the Ordinances were enacted, the jurisdictional evidence in the record precludes standing for Southside to challenge the Ordinances.

## CONCLUSION

Because Southside does not have standing to challenge the Ordinances, we determine the trial court abused its discretion by denying COSA's plea to the jurisdiction. Therefore, we reverse

---

[10] However, as this court has previously held, the absence of standing for these claims does not eliminate the possibility of standing for a future claim, should COSA ultimately decide to deny Southside's rezoning request. *See Electro Sales*, 2018 WL 1309709, at *4 ("In this case, both the change in zoning from commercial to semi-commercial use and COSA's decision that the middle suite had lost its nonconforming use rights occurred before Appellants purchased the strip center. Accordingly, Appellants do not have standing to sue for any injury caused by those decisions. However, Appellants were personally aggrieved by COSA's denial of their rezoning request; therefore, they have standing to sue for any injury caused by that decision.").

the trial court's order of May 8, 2024, denying the plea to the jurisdiction, and dismiss Southside's claims against COSA with prejudice.

H. Todd McCray, Justice